UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR SHARRIEFF GAY, E22575,<br><br>Plaintiff,<br><br>v.<br><br>AMY PARSONS, et al.,<br><br>Defendants. | Case No. 16-cv-05998-CRB<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

Omar Sharrieff Gay, who is currently incarcerated in a California state prison, filed a lawsuit pursuant to 42 U.S.C. § 1983 alleging a wide range of claims against psychologists Amy Parsons and Gregory S. Goldstein, among others. See generally Compl. (Dkt. 1). The claims included discrimination in a psychological examination and Comprehensive Risk Assessment report ("CRA") prepared for a parole suitability hearing. See generally Id. Defendants Parsons and Goldstein now move for judgment on the pleadings. See generally Mot. for Judgment on the Pleadings ("MJP") (Dkt. 55). They claim absolute quasi-judicial immunity as to individual-capacity claims and Eleventh Amendment immunity as to official-capacity claims. Id. at 6–8.

This Court denies Defendants' Motion for Judgment on the Pleadings as to the individual-capacity claims, and, because Gay has abandoned any official-capacity claims, denies Defendants' Motion for Judgment on the Pleadings as to official-capacity claims as moot.

# I. BACKGROUND

## A. Factual Background

Plaintiff Gay is a prisoner at California State Prison, Solano. In September 2015, while he was incarcerated at the Correctional Training Facility in Soledad, Board of Parole Hearings ("BPH") psychologists Parsons and Goldstein interviewed Gay to prepare a CRA report for Gay's parole suitability hearing. See generally Compl. Gay alleges that Parsons and Goldstein asked him "racially charged anti-Islamic questions" and called him racially and religiously charged names. Compl. ¶ 17. At one point, Parsons looked directly at Gay and said, "talk about radical Black Islamic terrorist." Id. ¶ 20. At another, Goldstein added, "Parsons and I are just trying to understand in your own words a little about your history as a Moslem [sic], who you are today? What particular ideology do you follow? Malcolm X? Luis [sic] Farrakhan? Osama Bin Laden? Who are you today?" Id. ¶ 15. Goldstein asked, "Why do you hate white people and Jews?" Id. at ¶ 9. And when Gay responded to a question about whether he thought highly of himself by saying that he had "self-esteem not conceit," id. ¶ 23, Goldstein asked, "is that the sort of teachings you learned from those criminals and Black Nationals growing up as a child?" Id. ¶ 25. Gay also contested the characterization of Black Nationalists as "Black Mafia thugs," id. ¶ 95, and "radical Black Islamic terrorists," id., but Goldstein insisted that they were "a bunch of gorillas and thugs in suits and bow ties." Id. ¶ 81. Gay contends that these examples suggest that Parsons and Goldstein were prejudiced in their determination that Gay is a high risk for future violence. See, e.g., Compl. ¶¶ 87–101.

Parsons and Goldstein offer a rather different account that focuses on findings in the CRA that justify their determination that Gay is a high risk for future violence. See generally Mot. for Summary Judgment ("MSJ") (Dkt. 22). The CRA noted that Gay's histories of violent crime and other antisocial behavior "are highly relevant risk factors for future violence," CRA (Dkt. 1-2) at 12–13, that began at a young age and increased in severity until his 1989 conviction for the attempted murder of a police officer. Id. at 5–7. The CRA identified further troubling antisocial behavior including a history of substance

abuse, negative relationships, a violent attitude, and employment problems. Id. at 12–13.

Parsons and Goldstein's CRA report also recounted that Gay, who attributed his behavior as a young adult to his father's teachings, is now a devout Muslim, "and has accepted Islamic law as his moral compass, guiding his beliefs and actions." Id. at 15. But according to Parsons and Goldstein, Gay did not "appear to have insight as to why he wholly embraced his father's value system, Islamic law, or any other system he chooses to embrace in the future." Id. They added that Gay's "total commitment to whatever cause he sees fit in the future, and his lack of insight as to why he totally commits himself to that cause as he did on the day he committed the life crime, is a highly significant factor in Mr. Gay's future risk for violence." Id.

The final section of the CRA report concluded that "Mr. Gay represents a ***High*** risk for violence." Id. at 17 (emphasis in original). Thereafter, Gay filed an objection to the CRA and requested that the BPH postpone his parole hearing. See Compl. ¶ 43; Compl. Exs. A, C, D, E (Dkts. 1-1, 1-3, 1-4, 1-5). When the BPH denied Gay's request, he stipulated to unsuitability for parole for three years. See Compl. ¶¶ 44–47.

### B. Procedural Background

Gay filed a pro se complaint under 42 U.S.C. § 1983, alleging seven claims against several parole officials for a variety of constitutional violations of his civil rights. See generally Compl. In the Order of Service (Dkt. 16) and Order on Summary Judgment ("SJ Order") (Dkt. 28), this Court narrowed Gay's claims. His only remaining claim is an equal protection claim, SJ Order at 8, 9, alleging that Parsons and Goldstein's assessment of Gay as a high risk for violence "was motivated at least in part by his status as an African-American Muslim." Id. at 7; see also Order of Service at 3.

Parsons and Goldstein now seek judgment on the pleadings as to this remaining claim, arguing that they are entitled to quasi-judicial and Eleventh Amendment immunity. See generally MJP.

Gay seeks an order "enjoining all so named defendants from engaging in the unlawful conduct alleged in [the] complaint," Compl. Prayer for Relief ¶ 1, another

3

1  "directing all so named defendants, the BPH-FAD unit to audio record any future psychological diagnostic evaluations of plaintiff," id. ¶ 3,[1] and for any "other injunctive relief as may be appropriate." Id. ¶ 2. He also seeks declaratory relief, id. ¶ 4, and damages. Id. ¶¶ 5–9.

## II. LEGAL STANDARD

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is proper "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990) (citation omitted). "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, 'a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'" Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting Brooks v. Dunlop Mfg. Inc., 2011 WL 6140912 at *3 (N.D. Cal. Dec. 9, 2011), aff'd, 702 F.3d 624 (Fed. Cir. 2012)). "A dismissal on the pleadings for failure to state a claim is proper only if 'the movant clearly establishes that no material issue of fact remains to be resolved[.]'" McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988) (quoting Doleman v. Meiji Mut. Life Ins. Co., 727 F.2d 1480, 1482 (9th Cir. 1984)). A court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of L.A., 828 F.2d 556, 561 (9th Cir. 1987).

---

[1] The Court presumes that Gay's reference to the "BPH-FAD" refers to the Forensic Assessment Division of the Board of Parole Hearings, which provides psychologists who prepare CRA reports for parole hearing panels.

4

## III. DISCUSSION

Parsons and Goldstein contend that they are entitled to quasi-judicial immunity as to individual-capacity claims, and Eleventh Amendment immunity as to official-capacity claims.[2] MJP at 6–8.

### A. Quasi-Judicial Immunity

Parsons and Goldstein argue that they are entitled to absolute quasi-judicial immunity as to Gay's equal protection claim that they assessed him as a high risk for violence at least in part because of his race and religion. MJP at 6–8.

Determining whether absolute quasi-judicial immunity applies requires a functional analysis of whether defendants exercised discretion functionally comparable to that of a judge. See Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435–36 (1991). For damages actions against state officials in their individual capacities, "[t]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." Swift v. California, 384 F.3d 1184, 1188 (9th Cir. 2004) (quoting Burns v. Reed, 500 U.S. 478, 486–87 (1991)) (alteration in original). To overcome that presumption and receive "absolute immunity for a particular action, the official must be performing a duty functionally comparable to one for which officials were rendered immune at common law." Miller v. Gammie, 335 F.3d 889, 897 (9th Cir. 2003).

---

[2] In their prior Motion for Summary Judgment, Parsons and Goldstein raised qualified immunity but did not raise either of the defenses they have asserted here. See MSJ at 8–10. This suggests that the affirmative defenses raised now might be untimely, because Federal Rule of Civil Procedure 8(c) requires that defendants raise affirmative defenses in initial pleadings. However, the Ninth Circuit liberalized this requirement. Healy Tibbitts Constr. Co. v. Ins. Co. of N. Am., 679 F.2d 803, 804 (9th Cir. 1982). A defendant may raise affirmative defenses after initial pleading so long as delay does not prejudice the plaintiff—and it is the plaintiff's burden to claim prejudice. See Rivera v. Anaya, 726 F.2d 564, 566 (9th Cir. 1984) ("No prejudice has been claimed by appellants. Accordingly, we hold that Anaya's failure to raise the defense of the statute of limitations in his initial pleading does not preclude him from making a motion for summary judgment based on that defense."); Camarillo v. McCarthy, 998 F.2d 638, 639 (9th Cir. 1993) ("In the absence of a showing of prejudice, however, an affirmative defense may be raised for the first time at summary judgment."). Gay has argued that quasi-judicial immunity should not attach, "especially not at this stage of the litigation," Opp. to MJP (Dkt. 59) at 7, but has not explicitly claimed that the affirmative defenses raised by Parsons and Goldstein prejudice his case. Accordingly, he has not demonstrated that he is prejudiced by the late-raising of the affirmative defenses now at issue.

5

The party asserting immunity has the burden to demonstrate their protection. Swift, 384 F.3d at 1189 (citing Antoine, 508 U.S. at 432).

In the parole context, "Anderson generally applied a functional test, and the case still dictates that an official who adjudicates parole decisions is entitled to quasi-judicial immunity for those decisions, and actions integral to those decisions." Swift v. California, 384 F.3d 1184, 1191 (9th Cir. 2004); see Anderson v. Boyd, 714 F.2d 906, 909–10 (9th Cir. 2004). Swift observed that "[a]bsolute immunity has also been extended to parole officials for the 'imposition of parole conditions' and the 'execution of parole revocation procedures,' tasks integrally related to an official's decision to grant or revoke parole." Swift, 384 F.3d at 1189 (quoting Anderson, 714 F.2d at 909). However, Swift also observed that "parole officials are not 'entitled to absolute immunity for conduct not requiring the exercise of quasi-judicial discretion.'" Id. (quoting Anderson, 714 F.3d at 909). Thus, Swift held, "while parole officials 'may claim absolute immunity for those actions relating to their responsibility to determine whether to revoke parole, their immunity for conduct arising from their duty to supervise parolees is qualified.'" Id. (quoting Anderson, 714 F.3d at 910).

Gay argues that, in light of Swift and Anderson, "Defendants are not entitled to immunity for their discriminatory actions because those were not related to their duties as parole board psychologists . . . . [D]uring his psychological evaluation, Defendants made derogatory comments to him on the basis of his race (African-American) and religion (Muslim)," and on that basis "knowingly made false statements in his evaluation regarding his propensity for future violence." Opp. at 6.

Parsons and Goldstein respond that they are entitled quasi-judicial immunity because preparing an evaluation report for a parole board is, they urge, a judge-like function. MJP at 6–7. They point to a per curiam Ninth Circuit case that held that quasi-judicial immunity protected a probation officer who prepared a probation report for a court, Burkes v. Callion, 433 F.2d 318, 319 (9th Cir. 1970) (per curiam), and several district court cases that, relying on Burkes, reasoned that because "there is no material

6

1  distinction between a psychologist performing an evaluation of a defendant at the direction
2  of a judge, and a psychologist performing the same function at the direction of a parole
3  board" absolute immunity should extend to a psychologist who "conducted an assessment
4  for the Board of Prison Hearings of plaintiff's future risk for danger in the community if
5  released on parole," Von Staich v. Atwood, 2011 WL 3319998, at *2 (C.D. Cal. Feb. 24,
6  2011), report and recommendation adopted sub nom. Staich v. Atwood, 2011 WL 3290414
7  (C.D. Cal. July 29, 2011); accord Hall v. Tehrani, 2013 WL 1326879, at *4 (N.D. Cal.
8  Mar. 29, 2013) ("[P]arole board officials are entitled to absolute, quasi-judicial immunity
9  from damages liability in suits by prisoners for actions taken when processing parole
10 applications."); Reece v. Smith, 2010 WL 5317440, at *2 (E.D. Cal. Dec. 20, 2010)
11 ("[D]efendant is immune from suit under the doctrine of 'quasi judicial immunity' for
12 actions taken in her role as a psychologist appointed by the parole board."); see MJP at 6–
13 7. Parsons and Goldstein argue that this line of precedent applies because the challenged
14 conduct was the preparation of a report for Gay's parole suitability, and thus "Defendants
15 Parsons and Goldstein have quasi-judicial immunity from damages liability in connection
16 with the preparation of inmate Gay's psychological evaluation." MJP at 8.

17 Gay responds by pointing to Swift and Anderson, where the Ninth Circuit found
18 parole board officials acting beyond the protection of a quasi-judicial function. See
19 Anderson, 714 F.2d at 909; Swift, 384 F.3d 1189. Most significantly, in Swift, the
20 plaintiff accused the defendants of submitting a report that contained falsehoods. 384 F.3d
21 at 1187. The defendants there argued that "all parole officials are entitled to absolute
22 immunity for actions that relate to the decision to grant, deny or revoke parole." Id.
23 at 1190. The Ninth Circuit rejected that argument. Id. It held, instead, that such immunity
24 is limited to acts "directly related to the decision to revoke parole. [Anderson, 714 F.3d] at
25 909 . . . (emphasis added)." Id. Moreover, it observed, "[u]nder Antoine, [508 U.S. at
26 435–36,] '[t]he relation of the action to a judicial proceeding . . . is no longer a relevant
27 standard.' . . . Antoine adopted a functional approach, under which we must determine not
28 whether an action 'relates to' the decision to grant, deny, or revoke parole . . . but whether

7

an action is taken by an official 'performing a duty functionally comparable to one for which officials were rendered immune at common law.'" Id. (quoting Miller, 335 F.3d at 897).

Gay is correct. The Ninth Circuit has instructed that parole officers who "submit[] an investigative report to the [parole board] and request[] that the [parole board] issue an order for a [parole] revocation hearing," but do not participate in that hearing, "are not absolutely immune from suits arising from conduct distinct from the decision to grant, deny, or revoke parole." Swift, 384 F.3d at 1186–87. Swift's reasoning is instructive. In Swift, the defendant "performed a non-discretionary function"—reporting a parole violation—"while another official made the discretionary prosecutorial decision to issue the order for a revocation hearing." Id. at 1193. The Ninth Circuit held that these non-discretionary functions "were more akin to a police officer seeking an arrest warrant," than to discretion exercised by a judge, and thus that quasi-judicial immunity did not apply. Id.

Here, the Complaint does not explain the parole process structure, or whether preparing the CRA was a discretionary function similar to preparing a probation report in a criminal case, see Burkes, 433 F.3d at 319, or instead similar to a non-discretionary parole officer function, see Swift, 384 F.3d at 1193. But the Complaint does indicate that Parsons and Goldstein did not participate in the parole hearing—the most judge-like component of the parole process. See Compl. ¶¶ 43–53. Similar to the defendants in Swift, it appears that Parsons and Goldstein were not engaged in a decision-making process similar to that of a judge, but rather a fact-gathering process similar to that of a police officer. See id.; accord Swift, 384 F.3d at 1186–87. Construing the pleadings "in the light most favorable to the nonmoving party," Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005), does not suggest that preparing the report for the parole body is functionally comparable to the discretion exercised by a judge.[3] At minimum, the pleadings certainly suggest that there

---

[3] To be sure, the Ninth Circuit has instructed that "[a] probation officer preparing and submitting a probation report in a criminal case is performing a 'quasi-judicial' function.'" Burkes, 433 F.2d at 319. But it is unclear whether that holding survives Antoine's instruction to apply a functional

8

are outstanding factual disputes as to the nature of Parsons and Goldstein's actions that Parsons and Goldstein have failed to resolve. Therefore, this Court concludes that Parsons and Goldstein have not shown that they are entitled to quasi-judicial immunity at this time.

### B. Eleventh Amendment Immunity

Parsons and Goldstein also claim Eleventh Amendment immunity against official capacity claims for damages. MJP at 8. At the hearing, Gay expressly abandoned all official capacity claims, as suggested in his Opposition. See Opp. at 7–8; Minute Entry (Dkt. 63). Therefore, this Court denies the motion as to official capacity claims as moot.

### IV. CONCLUSION

For the foregoing reasons, this Court denies Defendants' Motion for Judgment on the Pleadings as to the remaining claims against Defendants in their individual capacities and denies Defendants' motion as to official-capacity claims as moot.

**IT IS SO ORDERED.**

Dated: July 26, 2019

CHARLES R. BREYER
United States District Judge

---

approach, particular given that the Ninth Circuit decided Burkes by a different standard—whether officials' actions "related to the judicial process," Burkes, 433 F.2d at 319; see Swift, 384 F.3d at 1190 ("Antoine adopted a functional approach, under which we must determine not whether an action 'relates to' the decision to grant, deny, or revoke parole . . ."); Hernandez v. City of Oakley, 2012 WL 5411781, at *17 (N.D. Cal. Nov. 6, 2012) (Spero, M.J.) (noting that Burkes has been "reevaluate[d]" in light of subsequent Supreme Court precedent and expressing concern as to "Defendants' reliance on Burkes in support of their argument that absolute judicial immunity applies to the actions of Probation Officer Cardoza without any citation to subsequent Ninth Circuit cases that significantly narrowed the Burkes holding."). In light of Swift's subsequent clarification, Burkes does not control here. Similarly, the Court is unpersuaded by Defendants' reliance on district court cases that relied on Burkes and did not address Swift, see Von Staich, 2011 WL 3319998 (C.D. Cal. Feb. 24, 2011); Reece, 2010 WL 5317440 (E.D. Cal. Dec. 20, 2010); Hall, 2013 WL 1326879 (N.D. Cal. Mar. 29, 2013), especially given the distinction between a criminal proceeding and a parole hearing, see Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 5, 15 (1979) (noting that a parole hearing is "not a traditional adversary hearing" and that the "parole-release decision is . . . essentially an experienced prediction based on a host of variables").