IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR SHARRIEFF GAY,<br><br>    Plaintiff,<br><br>    v.<br><br>AMY PARSONS, et al.,<br><br>    Defendants. | Case No. 16-cv-05998-CRB<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGEMENT** |

    Plaintiff Omar Sharrieff Gay brings a claim under 42 U.S.C. § 1983 against Board of Parole ("BOP") psychologists Amy Parsons and Gregory Goldstein ("Defendants"). Plaintiff alleges that in preparing a risk assessment in advance of a parole hearing, Defendants assessed Plaintiff to be a high risk for future violence at least in part because he is African American and Muslim, thereby violating his rights under the equal protection clause. On April 25, 2019, Defendants moved for judgement on the pleadings, arguing that they were entitled to quasi-judicial immunity that absolutely shielded them from liability against Plaintiff's claim. The Court denied the motion, holding that it could not decide the issue based on the pleadings. The Ninth Circuit affirmed. Defendants now move for summary judgment on the issue, arguing that the undisputed facts establish that they are entitled to quasi-judicial immunity as a matter of law. See Motion for Summary Judgment ("Motion") (dkt. 83). For the reasons set forth below, the Court denies the Motion.

I.  BACKGROUND

A.  Plaintiff's Allegations

Plaintiff is African American and Muslim. Gay Decl. (dkt. 88–2) ¶ 2. He is currently an inmate in the custody of the California Department of Corrections and Rehabilitation. Id. ¶ 3. He alleges that Defendants discriminated against him based on race and religion when they prepared a Comprehensive Risk Assessment ("CRA") report that found that Plaintiff posed a high risk for future violence. See generally Compl. (dkt. 1).

Multiple prior orders describe Plaintiff's allegations in detail.[1] In summary, Plaintiff was incarcerated at the Correctional Training Facility in Soledad in September 2015. Order on Pleadings at 2. In advance of a parole suitability hearing, Defendants interviewed Plaintiff as part of the process of preparing a CRA report. Id. CRA reports assess an inmate's risk for future violence and are provided to the BOP for use in determining an inmate's eligibility for parole. Id. The CRA report prepared by Defendants concluded that Plaintiff presented a high risk for future violence. Id. at 3.

The parties disagree about the basis of the report's conclusion. Id. at 1–3. The report details several findings that purport to support the conclusion, such as Plaintiff's "histories of violent crime and other antisocial behavior," including "a history of substance abuse, negative relationships, a violent attitude, and employment problems." Id. at 2–3. Defendants contend that these and other similar findings stated in the report supported the conclusion that Plaintiff presented a high risk for future violence. Id.

Plaintiff tells a different story. He alleges that during the assessment interview, Defendants repeatedly asked him "racially charged anti-Islamic questions" and made racially and religiously charged comments that revealed clear bias against Plaintiff based on his race and religion. Id. at 1. He alleges that Defendants assessed him to be a high risk for violence at least in part because he is African American and Muslim. Id.

---

[1] See Order of Service (dkt. 16); Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgement ("MSJ Order") (dkt. 28); Order Denying Defendants' Motion for Judgement on the Pleadings ("Order on Pleadings") (dkt. 64).

### B. Defendants' Judicial Immunity Defense

On April 25, 2019, Defendants moved for judgement on the pleadings, arguing that they were entitled to quasi-judicial immunity. See generally Mot. for Judgment on the Pleadings (dkt. 55).

The Court denied the motion. Order on Pleadings at 8. It explained that whether Defendants are entitled to quasi-judicial immunity turns on whether they "exercised discretion functionally comparable to that of a judge" in preparing the CRA report. Id. at 5. The Court held that it could not make that determination on the pleadings because the complaint did not make clear whether the process of preparing the CRA report involved the requisite level of discretion. Id. at 8. The Court concluded that "there are outstanding factual disputes as to the nature of [Defendants'] actions" and that Defendants "have not shown they are entitled to quasi-judicial immunity at this time." Id. at 8–9.

Defendants appealed the ruling. Notice of Appeal (dkt. 70). On June 22, 2020, the Ninth Circuit affirmed it. USCA Memorandum (dkt. 74). In affirming, the Ninth Circuit similarly expressed "no view on [Defendants'] entitlement to immunity, should the evidence show the facts to be other than as pleaded." Id. at 3 (citation omitted).

### C. The Developed Factual Record

Following the denial of Defendants' motion for judgment on the pleadings, the parties developed a factual record regarding the process of preparing CRA reports, and the record now contains the following undisputed facts regarding the reports.

The Forensic Assessment Division ("FAD") is a recently created arm of the BOP. Shaffer Decl. (dkt. 83-2) ¶ 6.[2] One of the FAD's main functions is to develop standardized psychological risk assessment processes, such as CRA reports. Id. ¶¶ 6–7. CRA reports present an assessment of an inmate's risk of future violence. Id. ¶ 7; Goldstein Decl. (dkt.

---

[2] Plaintiff objects to the admissibility of the Shaffer Declaration on the grounds of lack of foundation, lack of personal knowledge, and improper opinion testimony. Opp. at 14, fn. 1. The arguments lack merit because the declaration establishes that Shaffer, the Executive Officer of the California Board of Parole hearings since 2011, has the requisite foundation and personal knowledge. See Schaffer Decl. ¶¶ 2–3. And her statements are factual, not improper lay opinion. See generally id.

3

83-1) ¶ 3. The reports are provided to BOP parole panels for use in determining whether to grant an inmate parole. Shaffer Decl. ¶ 7; Goldstein Decl. ¶ 3. CRA reports provide the parole panel with an expert's assessment of an inmate's risk of violence, but they do "not substitute for the panel's determination of an inmate's current risk of dangerousness if released to the community." Shaffer Decl. ¶ 7. The panel makes its own independent determination about an inmate's risk of violence and may choose not to adopt the recommendation in a CRA report. Id.; Mastromonaco Decl. (dkt. 88-1) Ex. 3 at 29:15–20.

FAD psychologists follow a multi-step process to prepare CRA reports. Shaffer Declaration ¶¶ 8–9. The process generally begins with a comprehensive review of an inmate's personal file. Id. The personal file contains an array of background information about an inmate, including medical, criminal, and educational history. Id. After an FAD psychologist reviews an inmate's personal file, they perform an "extensive" interview with the inmate. Goldstein Decl. ¶ 4; Shaffer Decl. ¶ 9. The interview covers a broad range of topics, including "programming efforts, disciplinary infractions, possible parole plans and community support." Shaffer Decl. ¶ 9.

Throughout the process of reviewing an inmate's file and interviewing the inmate, FAD psychologists incorporate structured risk assessment instruments, including the widely used HCR 20-V3 (Historical Clinical Risk Management -20), Psychopathy Checklist, and STATIC-99R. Id. ¶¶ 9–10; see also HCR-20 Assessing Risk for Violence User Guide, Shaffer Decl. Ex. A (dkt. 83–3). The risk assessment instruments help FAD psychologists determine an inmate's profile for violence and anti-social behavior using standardized criteria. Shaffer Decl. ¶¶ 9–10.

Based on the file review, interview, and risk assessments, FAD psychologists exercise their judgement to reach a conclusion about an inmate's risk of violence. Id. ¶ 11. The conclusion is expressed as low, moderate, or high. Id. ¶ 12. There is "not a numerical risk score or algorithm for determining risk." Id. Rather, risk assessment determinations reflect FAD psychologists' assessment of a particular inmate, based on social, health, historical, and behavioral factors unique to that inmate. Id.; Goldstein Decl. ¶ 4. FAD

4

1  psychologists document their risk assessment and the findings supporting the assessment
2  in CRA reports and provide the reports to parole panels for use in parole proceedings.
3  Shaffer Decl. ¶¶ 15–16.

### D. The Instant Summary Judgment Motion

Defendants now move for summary judgment based on the developed factual record. See generally Motion. Plaintiff opposes the Motion. Opposition to MSJ ("Opp.") (dkt. 88).

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine issue of fact is one that could reasonably be resolved in favor of either party. See Celotex, 477 U.S. at 323–24. A dispute is "material" only if it could affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

"A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000) (citation omitted). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id. (citing High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563, 574 (9th Cir. 1990)). "In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." Id. (citation omitted).

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything." Id. at 1103 (citation omitted). If, however, a

1  moving party carries its burden of production, the nonmoving party must produce evidence
2  to support its claim or defense. See id. If the nonmoving party fails to produce enough
3  evidence to create a genuine issue of material fact, the moving party wins the motion for
4  summary judgment. See id. But if the nonmoving party produces enough evidence to
5  create a genuine issue of material fact, the nonmoving party defeats the motion. See id.

## III.   DISCUSSION

Defendants' Motion turns on whether they have shown that there is no genuine dispute of material fact that preparing a CRA report is a function entitled to judicial immunity as a matter of law. Defendants argue that the exercise of discretionary judgment is the touchstone of judicial immunity and that the undisputed facts establish that they exercised discretionary judgment in preparing CRA reports. Motion at 10–12. In response, Plaintiff argues that Defendants have failed to demonstrate that preparing CRA reports involves a level of discretionary judgment comparable to that exercised by judges and so Defendants are not entitled to judicial immunity as a matter of law. Opp. at 9–13. For the reasons explained below, Plaintiff is correct.

### A.   Judicial Immunity from § 1983 Claims

Plaintiff brings his claim under 42 U.S.C. § 1983. See Order on Pleadings at 8. Section 1983 enables "individuals whose rights were deprived by persons acting under color of state law to bring their claims in federal court." Miller v. Gammie, 335 F.3d 889, 895 (9th Cir. 2003). Despite the law's broad scope, the Supreme Court has recognized that certain government actors enjoy varying degrees of immunity from § 1983 claims. See, e.g., Butz v. Economou, 438 U.S. 478 (1978); Forrester v. White, 484 U.S. 219 (1988).

Judges are one category of government actor that receives certain immunities against § 1983 claims. Forrester, 484 U.S. at 221. Most relevant here, judges receive absolute immunity against claims that are based on their "judicial or adjudicative" acts. Id. The "touchstone" of a judicial or adjudicative act is the "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435–36 (1993). For non-judicial or

non-adjudicative acts, judges may be entitled to qualified immunity.  See Forrester, 484 U.S. at 221.

The rationale for absolute immunity for judicial acts is "long-settled."  See Antoine, 508 U.S. at 435.  Judges regularly adjudicate "controversies involving not merely great pecuniary interests, but the liberty and character of the parties, and consequently exciting the deepest feelings."  Butz, 438 U.S. at 509.  Resolution of such disputes generally results in "at least one losing party" who is "apt to complain of the judgment against him" and "to pass the ascription of improper motives to the judge."  Id.; see also Forrester, 484 U.S. at 226 ("the nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have").  Absolute immunity for judicial acts accordingly protects "judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants."  Forrester, 484 U.S. at 225.

In this vein, there are safeguards "built into the judicial process that tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct."  See Butz, 438 U.S. at 512.  The safeguards include "insulation of the judge from political influence, the importance of precedent in resolving controversies, the adversary nature of the process, and the correctability of err on appeal."  Id.  The safeguards further support absolute immunity for judicial acts.  See id.

### B. Extension of Judicial Immunity to Non-Judges

Defendants here are not judges, but they argue that absolute judicial immunity should be extended to them because they act as an agent of the BOP and "exercise a discretionary judgment in preparing CRAs."  See Motion at 11–13.

Non-judicial actors "performing the duties of [a] judge may enjoy quasi-judicial immunity for some functions."  Swift v. California, 384 F.3d 1184, 1188 (9th Cir. 2004).  "The proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity."  Antoine, 508 U.S. at 432.  "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties."  Burns v. Reed, 500 U.S. 478, 486–87 (1991); see also Forrester,

7

484 U.S. at 224 ("the Court has recognized a category of 'qualified' immunity that avoids unnecessarily extending the scope of the traditional concept of absolute immunity").

In Antoine, the Supreme Court articulated a new standard for determining whether a non-judicial actor is entitled to judicial immunity. Antoine, 508 U.S. at 437. Under prior precedent, the inquiry focused on the relation of a particular action to the judicial process. Swift, 384 F.3d at 1190. Antoine overruled that test and explained that the inquiry now centers on the level of discretionary judgement involved in the relevant function. See, e.g., Swift, 384 F.3d at 1190 (Antoine "worked a sea change in the way in which we are to examine absolute quasi-judicial immunity for nonjudicial officers"). Under Antoine, "judicial immunity is extended to officials other than judges" when "their judgments are functionally comparable to those of judges—that is, because they, too, exercise a discretionary judgment as part of their function." Antoine, 508 U.S. at 436 (cleaned up).

### 1. Analysis

#### a. Arm of the BOP

Defendants argue that they are entitled to judicial immunity because they act as an arm of the BOP and are "integral" to the decision of whether parole should be granted. Motion at 11–13. Plaintiff responds that an actor's relation to a particular process is no longer relevant for determining judicial immunity. Opp. at 11. Plaintiff is right.

Antoine held that judicial immunity is not extended to an official simply "because they are part of the judicial function."[3] See Antoine, 508 U.S. at 437 (tasks "essential to the very functioning of the courts, have not . . . been regarded as judicial acts") (citation omitted); Swift, 384 F. 3d at 1190. Under Antoine, simply acting as an agent of the BOP provides no basis for extending Defendants judicial immunity, regardless of how integral their functions are to the parole proceedings.[4] Antoine, 508 U.S. at 436–37; see also

---

[3] Defendants seize on language from Swift that they claim "confirms that absolute immunity extends to parole officials for 'tasks integrally related'" to parole decisions. Motion at 15 (citing Swift, 384 F.3d at 1189). But that passage in Swift discusses the prior "relates to" test applied in Anderson, and Swift confirms that Antoine overruled it. See Swift, 384 F.3d at 1190 ("[T]o the extent Anderson applied a 'relates to' test, as opposed to a functional test, Antoine overruled it.").
[4] Defendants' reliance on Burkes v. Callion, 433 F.2d 318, 319 (9th Cir. 1970) and Williams v.

8

Miller, 335 F.3d at 897.  Instead, the dispositive question is whether preparation of CRA reports involves the exercise of discretion comparable to that of a judge.[5]  Antoine, 508 U.S. at 436–37.

### b. Exercise of Discretion

Defendants argue that preparing a CRA report is a function entitled to judicial immunity because it necessarily involves an exercise of discretionary judgment as to an inmate's risk for violence.  Motion at 11–13.  Defendants specifically argue that they "exercise a discretionary judgment" to determine whether an inmate's release "would pose a low, moderate, or high risk of danger to society."  Id. at 12.  This argument falls short for several reasons.

To start, the "touchstone" of judicial discretion is that it applies in the context of "resolving disputes between parties, or of authoritatively adjudicating private rights." Antoine, 508 U.S. at 435–36.  Defendants offer no evidence suggesting that CRA reports are prepared in a similarly adversarial context.  But it is the adversarial context that supports absolute immunity for judges.  Given that adversarial proceedings generally result in "at least one losing party" apt to "to pass the ascription of improper motives to the judge," see Butz, 438 U.S. at 509, judicial immunity ensures that judges have the independence to exercise impartial judgment.  Defendants fail to show that they exercise their judgment in a similar context and thus warrant similar protection.

---

Consovoy, 453 F.3d 173 (3rd Cir. 2006) is unavailing.  In Burkes, the Ninth Circuit applied the "related to the judicial process" standard that Antoine subsequently overruled.  See Swift, 384 F.3d at 1190.  Similarly, while the out-of-circuit decision in Williams purported to apply a "functional approach," the analysis centers on whether the psychologist "performed a function integral to the judicial process."  See Williams, 453 F.3d at 178–79.  As explained, this is no longer the controlling test in the Ninth Circuit, where the focus is on the level of discretion involved in the function, not its importance to the judicial process.  Swift, 384 F.3d at 1190.

[5] To be sure, the Ninth Circuit has found that parole hearings are akin to judicial proceedings and that parole hearing officers who make decisions to grant or revoke parole perform functions comparable to those of judges.  See Swift, 384 F.3d at 1189.  But Defendants were not members of the BOP parole panel tasked with determining Plaintiff's eligibility for parole.  Mastromonaco Decl., Ex. 3 at 30:11–12; 47:15–19.  Defendants prepared a CRA report for use by the panel, but neither had any direct role in the panel's decisions themselves.  Id.; see also Mastromonaco Decl. Ex. 2 at 55:6–9.

The Ninth Circuit has also made clear that the mere presence of discretion in a function does not automatically give rise to judicial immunity. See Miller, 335 F.3d at 898 (stating that not all "discretionary decisions and recommendations" are "functionally similar" to the discretion exercised by judges). In Miller, examples of discretionary decisions that were not entitled to judicial immunity included a social worker's "decisions and recommendations as to the particular home where a child is to go or as to the particular foster parents who are to provide care." Id.

Here, Defendants' CRA reports are analogous to the examples in Miller. Like social workers, Defendants provide a recommendation that reflects their informed judgment, but that recommendation does not reflect a judge-like exercise of discretion. For instance, judges exercise their discretion to fashion a wide range of rulings based on the unique circumstances of each case. In contrast, Defendants' ability to exercise discretion is limited to a determination of whether an inmate poses "a low, moderate, or high risk of danger to society." Motion at 12 (citing Schaffer Decl. ¶ 12). While Defendants do have to make a judgment as to the particular risk category of a given inmate, the range of their discretionary judgments is not nearly as broad as that of a judge. This fact cuts against finding that their discretionary judgment should be entitled to the same protection.

In addition, judges exercise their discretion to issue rulings that bind the parties before them. In contrast, the CRA reports prepared by Defendants are not binding on the BOP parole panel. Shaffer Decl. ¶ 7. They are more analogous to a social worker providing an informed recommendation on a home placement than a binding order issued by a judge to resolve a dispute between multiple parties. See Miller, 335 F.3d at 898.

Defendants' argument that the threat of legal liability would compromise the objectivity of CRA reports is not persuasive. Motion at 13–14. Defendants offer no evidence "of any significant volume of vexatious and burdensome actions against [BOP psychologists]." Antoine, 508 U.S. at 437. In addition, the judicial process involves structural safeguards—like "the adversary nature of the process" and "the correctability of

10

err on appeal"—that support absolute immunity for a judge's judicial acts.  See Butz, 438 U.S. at 512.  Defendants identify no analogous safeguards that would support absolute immunity for the preparation of CRA reports here.

## IV. CONCLUSION

The Supreme Court has stated that absolute immunity from monetary damages is "strong medicine," Forrester, 484 U.S. at 230, and Defendants have not established that they are entitled to it as a matter of law.  The Court thus denies Defendants' Motion.

**IT IS SO ORDERED.**

Dated: October 14, 2021

CHARLES R. BREYER
United States District Judge