UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| OMAR SHARRIEFF GAY,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>AMY PARSONS, et al.,<br><br>　　　　Defendants. | Case No.  16-cv-05998-CRB (PHK)<br><br>**ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFF OMAR S. GAY'S REQUEST FOR DISCOVERY SANCTIONS**<br><br>Re: Dkt. 111 |

Before the Court is Plaintiff Omar Sharrieff Gay's updated request for discovery sanctions against Defendants Amy Parsons and Gregory Goldstein (collectively "Defendants"). [Dkt. 111]. The request was included as part of a Joint Discovery Letter Brief filed by Plaintiff Gay and Defendants. [Dkt. 111]. After carefully considering the Parties' Joint Discovery Letter Brief, the Court finds this issue amenable for resolution without oral argument. Civ. L.R. 7-1(b). For the following reasons, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Plaintiff Gay's request for sanctions.

## BACKGROUND

**I.    FACTUAL BACKGROUND**

For purposes of this Order, the undersigned summarizes the relevant allegations as follows. Plaintiff Gay alleges that in September 2015, while he was incarcerated at the Correctional Training Facility in Soledad, California, Defendants Parsons and Goldstein, who were then employed as psychologists by the Board of Parole Hearings ("BPH"), interviewed Plaintiff Gay for a psychological diagnostic evaluation in preparation for a subsequent parole suitability hearing. [Dkt. 111 at 1]. Plaintiff Gay alleges that, because he is African-American and Muslim, these Defendants

assessed him as high risk for future violence in their official report. *Id*. Plaintiff Gay alleges that this conduct amounts to unlawful discrimination and retaliation. *Id*.

On June 28, 2017, the Court found that Plaintiff Gay's allegations, liberally construed, appeared to state arguably cognizable claims under Section 1983 for denial of equal protection and for retaliation against Defendants Parsons and Goldstein, and ordered the United States Marshal to serve them with the Complaint. [Dkt. 16]. The Court dismissed all other then-asserted claims and dismissed all other Defendants under the authority of 28 U.S.C. § 1915A(b).

On April 1, 2024, the Parties submitted a Joint Discovery Letter Brief which set forth the following undisputed facts. [Dkt. 111 at 1]. On May 9, 2019, Plaintiff Gay served Requests for Productions ("RFP's") seeking "[a]ll documents memorializing the Psychological Diagnostic Interview, including notes taken before, during, and after, handwritten or otherwise." *Id*. On April 21, 2021, Defendant Goldstein responded that "Defendant does not have notes or other documents from the Psychological Diagnostic Interview [. . .] such notes or other documents are in possession of the [BPH], Forensic Assessment Division." *Id*. Eventually, Defendant Goldstein's counsel informed Plaintiff Gay that, after the September 2015 interview, Defendant Goldstein turned over his personal interview notes to BPH. Defendant Goldstein's counsel then further asserted that BPH kept the notes in its Sacramento office for a year, after which point the notes were then stored offsite for "roughly" three years, until "around" September 2019, when the notes were destroyed by BPH. *Id.* at 2.

**II.     PROCEDURAL BACKGROUND**

The case is proceeding on the basis of Plaintiff Gay's Complaint, originally filed in this District on October 17, 2016. [Dkt. 1]. The case was then transferred to the U.S. District Court for the Eastern District of California on October 21, 2016, and on March 21, 2017, the case was transferred back to this District. [Dkts. 6 & 13]. On October 1, 2019, the District Court granted an Order Staying District Court Deadlines, and over the ensuing years this case received a variety of additional deadline extensions. [Dkts. 73, 82, 85, 87, & 90].

Relevant for this Order, Plaintiff Gay filed a Motion for Discovery Sanctions on February 26, 2024, seeking sanctions based upon the aforementioned destruction of Defendant Goldstein's

personal interview notes. [Dkt. 106]. On February 27, 2024, the case was referred to the undersigned for all discovery purposes. [Dkt. 107]. The Parties were then ordered to meet and confer to attempt to resolve the discovery dispute. [Dkt. 108]. However, the dispute remained unresolved, and as a result, Plaintiff Gay was ordered to withdraw his Motion for Discovery Sanctions and the Parties were then ordered to refile a Joint Discovery Letter Brief. *Id*. On April 1, 2024, the Parties filed the instant Joint Discovery Letter Brief. [Dkts. 109, 110, & 111]. In summary, Plaintiff seeks sanctions in the form of an adverse inference jury instruction due to the asserted spoliation of the interview notes.

## MAGISTRATE JUDGE JURISDICTION

Pursuant to 28 U.S.C. § 636, the jurisdiction and authority of a Magistrate Judge to determine pretrial matters pending before the district court is established by well-known parameters. Regarding discovery sanctions, "[t]he authority of [Magistrate Judges] to impose discovery sanctions is established by 28 U.S.C. § 636 and recognized by [. . . prior Ninth Circuit] decisions." *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991). Magistrate Judge jurisdiction to impose discovery sanctions turns on "whether the [sanctions order] is construed as non-dispositive or dispositive." *Id.* (citing Fed. R. Civ. P. 72 (implementing the Federal Magistrates Act, 28 U.S.C. §§ 604, 631–639)). If a matter is dispositive of a claim or defense of a party, Magistrate Judges shall confine themselves to entering "a recommendation for the disposition of the matter." Fed. R. Civ. P. 72(b). On the other hand, if a matter is not dispositive, a Magistrate Judge may enter "a written order setting forth [its] disposition" and the district court shall defer to this order unless the order is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a).

Regarding spoliation sanctions in particular, courts in the Ninth Circuit have upheld a Magistrate Judge's authority to "order [spoliation] sanctions under both Rule 11 and Rule 37 of the Federal Rules of Civil Procedure, provided that the actual sanctions imposed are non-dispositive." *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 988, 989 (N.D. Cal. 2012) (Magistrate Judges "throughout the Ninth Circuit have commonly relied on their inherent power to issue adverse inference jury instructions as a sanction for spoliation."). Indeed, a review of precedent establishes that Magistrate Judges in the Ninth Circuit have issued Orders (and not Reports and

3

1  Recommendations) imposing non-dispositive sanctions under either Rule 11, Rule 37, or the Court's
2  inherent authority.  *See, e.g.*, *Soule v. P.F. Chang's China Bistro, Inc.*, No. 218CV02239GMNEJY,
3  2020 WL 959245, at *9 (D. Nev. Feb. 26, 2020); *Cont'l Cas. Co. v. St. Paul Surplus Lines Ins. Co.*,
4  265 F.R.D. 510, 535 (E.D. Cal. 2010); *Herson v. City of Richmond*, No. C-09-02516 PJH LB, 2011
5  WL 3516162, at *2 (N.D. Cal. Aug. 11, 2011); *Io Grp. Inc. v. GLBT Ltd.*, No. C-10-1282 MMC
6  (DMR), 2011 WL 4974337 (N.D. Cal. Oct. 19, 2011); *Aiello v. Kroger Co.*, 2:08-CV-01729-HDM-
7  RJJ, 2010 WL 3522259 (D. Nev. Sept. 1, 2010); *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms,
8  Inc.*, No. C 06-3359 JF(RS), 2009 WL 1949124 (N.D. Cal. July 2, 2009).  Accordingly, the Court
9  turns to the merits of the dispute, as resolved by this Order.

## LEGAL STANDARDS

### I. NON-PARTY SPOLIATION

It is well-established in the Ninth Circuit that in order to be awarded adverse inference jury instructions as a sanction for spoliation of evidence, the party seeking such relief must first show the following elements: (A) the party with control over the evidence had an obligation to preserve it at the time of destruction, (B) the evidence was relevant to a party's claim or defense, and (C) the evidence was destroyed with a culpable state of mind.  *See, e.g., Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218 (N.D. Cal. 2022); *Erhart v. BofI Holding, Inc.,* No. 15-CV-02287-BAS(NLS), 2016 WL 5110453 (S.D. Cal. Sept. 21, 2016); *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604 (C.D. Cal. 2013).

### II. IMPUTATION OF NON-PARTY SPOLIATION

When the party alleged to have spoliated evidence is a non-party to the lawsuit, sanctions may be awarded only if this non-party is found to have spoliated evidence, as outlined above, and if it is shown that such non-party's spoliation may be imputed to an adverse party to the lawsuit.  In order to impute non-party spoliation to an adverse party to the lawsuit, the moving party seeking the sanctions must show: (A) the adverse party to the lawsuit had an obligation to preserve evidence at the time of destruction and (B) the adverse party acted with a culpable state of mind when it failed to prevent the non-party from destroying evidence.  *See Pettit v. Smith*, 45 F. Supp. 3d 1099, 1105 (D. Ariz. 2014); *Ramos v. Swatzell*, No. EDCV121089BROSPX, 2017 WL 2857523, at *13 (C.D.

4

Cal. June 5, 2017*), report and recommendation adopted*, No. EDCV121089BROSPX, 2017 WL 2841695 (C.D. Cal. June 30, 2017).

### III. REMEDY

After finding that (I) the non-party spoliated evidence, and (II) this non-party spoliation may be imputed to an adverse party to the lawsuit, the Court may then turn to (III) what, if any, sanction is appropriate and necessary to remedy the non-party's spoliation. *See Pettit*, 45 F. Supp. 3d at 1105; *Ramos*, 2017 WL 2857523, at *13.

## DISCUSSION

### I. WHETHER NON-PARTY BPH SPOLIATED EVIDENCE

#### A. Whether non-Party BPH had an Obligation to Preserve Relevant Evidence

A party's obligation to preserve generally attaches "[a]s soon as a potential claim is identified, [whereby] a litigant is [then] under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *In re Napster, Inc. Copyright Litig*., 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006); *see also Apple*, 888 F. Supp. 2d at 991 ("there is no question that the duty to preserve relevant evidence may arise even before litigation is formally commenced."); *AmeriPride Servs., Inc. v. Valley Indus. Serv., Inc*., No. S-00-113 LKK/JFM, 2006 WL 2308442 (E.D. Cal. Aug. 9, 2006) (finding that the anticipated litigation date was established when a potential claim is identified); *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1346–47 (Fed. Cir. 2011) (litigation need only be reasonably foreseeable, not immediate or certain). The duty or obligation to preserve evidence arises not only when litigation actually commences, "but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011); *see Pettit*, 45 F. Supp. 3d at 1105.

In the Parties' Joint Discovery Letter Brief, Defendants offer no arguments disputing whether non-party BPH had a duty to preserve evidence relevant to the litigation. [Dkt. 111]. On the other hand, Plaintiff Gay argues that "BPH's receipt of a litigation hold" imposed upon BPH a duty to preserve, which BPH then violated by failing to preserve documents in a "grossly negligent" manner. *Id.* at 3–4.

1   As a factual matter, the Parties do not dispute that non-party BPH was sent a litigation hold by Defendants in September 2017. *Id.* at 3, 6. The Parties also do not dispute that the subject interview notes were destroyed in 2019; Plaintiff Gay specifically alleges they were destroyed "around" September 2019. *Id.* at 2, 6. Thus, at the very least, BPH received a litigation hold and received actual notice of a request to preserve relevant evidence, well over a year, and possibly almost two full years, before BPH destroyed the notes at some time in 2019. A party's duty to preserve evidence arises when they receive a formal request to preserve such evidence. *See, e.g.*, *Apple Inc. v. Samsung Electronics Co., Ltd.*, 888 F. Supp. 2d 976, 990-91 (N.D. Cal. 2012) (affirming Magistrate Judge's finding that duty to preserve evidence arose in the month when litigation hold notices were issued); *Scalia v. County of Kern*, 576 F. Supp. 3d, 706 (E.D. Cal. 2021) (defendant did not dispute duty to preserve evidence "at the time plaintiff first sent preservation letters"). Whether a duty to preserve arises "is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the BPH's duty to preserve the notes at issue arose at the time BPH received the litigation hold notice in September 2017.

Because BPH is not a party to this action, the question arises as to whether or not BPH's status as a third party relieves it of the obligation to preserve evidence. Some courts hold that the duty to preserve evidence generally applies to parties to the litigation absent some special relationship or duty. *See, e.g., Wilson v. Beloit Corp.*, 921 F.2d 765, 767 (8th Cir.1990) ("Absent some special relationship or duty arising by reason of an agreement, contract, statute, or other special circumstance, the general rule is that there is no duty to preserve possible evidence for another party to aid that other party in some future legal action against a third party."). However, courts in the Ninth Circuit have held that third parties who are "not disinterested" in the litigation may have a duty preserve evidence. *See e.g., Pettit*, 45 F. Supp. 3d at 1106 (finding that non-party Arizona Department of Corrections was not a disinterested party and therefore "had a duty to preserve evidence relevant to [the] case once it knew that litigation was reasonably likely."); *Ramos*, 2017 WL 2857523, at *6 (finding that a third-party was not a disinterested party, because they "controlled [defendant's] personnel file and had access to it, and it [the third party] is also providing [defendant's] legal defense."); *see also Woods v. Scissons*, 2019 WL 3816727, *6 (D. Ariz. Aug.

14, 2019) (imputing spoliation by police department to defendant police officer); . Thus, where a non-party is determined to be an interested party, then this non-party has its own independent duty to preserve evidence, assuming they were on notice of actual or pending litigation. *See Pettit*, 45 F. Supp. 3d at 1106.

The relevant factors to consider in this determination include the professional and legal relationships between Defendants and non-party BPH, and the extent of BPH's control over the spoliated evidence in question. *See Ramos*, 2017 WL 2857523, at *6 (finding that a non-party was not a disinterested party due to the extent of its legal relationship to defendants, as well as the non-party's control over the relevant evidence). Here, Defendants are psychologists employed by non-party BPH. [Dkt. 111 at 5]. The Defendants are sued and named in the Complaint as Defendants both in their individual and official capacities. [Dkt. 1]. Defendants are represented by the California Attorney General in this litigation. Under California law, BPH (as a state agency) is presumptively also represented in litigation by the California Attorney General's office. Cal. Govt. Code §§ 11040(a), (c). The operative facts underlying the current litigation center upon a comprehensive risk assessment administered by Defendants as part of standard BPH protocol (and the notes are directly relevant to that assessment). [Dkt. 111 at 5]. Further, Defendants sent their notes to BPH, and the notes remained in BPH custody until they were destroyed. *Id*. During the time notes were under BPH's control, the Defendants here had no demonstrated ability to destroy them, much less access them. *Id.*

The Court therefore finds that the professional and legal relationships between Defendants and BPH, as well as BPH's complete control over the spoliated evidence in question, favors a finding that non-party BPH is *not* a disinterested third party to the present litigation. *See e.g.*, *Pettit*, 45 F. Supp. 3d at 1106 (finding that a non-party was not a disinterested party on the grounds that it was "responsible for [d]efendants' training and conduct, and it had complete control over the relevant evidence."). Thus, the Court finds that non-party BPH had an independent obligation to preserve relevant evidence at the time Defendant Goldstein's personal notes were destroyed.

### B. Whether the Allegedly Spoliated Evidence was Relevant

In the spoliation context, relevancy is evaluated under a broad standard which considers

1  whether the missing evidence is "relevant to a party's claim or defense." *Ramos*, 2017 WL 2857523,
2  at *6; *see also Pettit*, 45 F. Supp. 3d at 1111 (considering whether the missing evidence was
3  "relevant to the claims at issue in this case."). This standard of relevancy is based on the familiar
4  standards of the Federal Rules of Civil Procedure and has a broader scope than the relevancy
5  standards of the Federal Rules of Evidence. Fed. R. Civ. P. 26(b); Fed. R. Evid. 401.

6  Here, Plaintiff Gay alleges that Defendants made comments indicating that Defendants were
7  biased against Muslim and African American inmates and that this bias was reflected in the official
8  report that Defendants prepared as part of Plaintiff Gay's 2015 parole suitability hearing. [Dkt. 111
9  at 1]. Neither party disputes that Defendant Goldstein also took personal notes during this 2015
10 parole suitability hearing, and Plaintiff Gay contends that these personal notes may contain evidence
11 supporting his allegations of bias. *Id* at 2–3. Specifically, Plaintiff Gay argues that Defendant
12 Goldstein's personal notes "were clearly relevant[,]" since the "psychological diagnostic interview
13 [was] memorialized" in the notes, and the "central issue of this case is whether Defendants
14 discriminated against Plaintiff Gay in the course of [that] interview." *Id.* at 3.

15 In opposition, Defendants argue that the official report does not reflect the bias alleged by
16 Plaintiff Gay, and they emphasize that, unlike the personal notes, the official report still exists. *Id*
17 at 5. Because Defendant Goldstein's personal notes were destroyed, Plaintiff Gay's contention that
18 the notes contain relevant evidence is necessarily speculative. However, the Court is not persuaded
19 that this negates the relevance of the notes. *See e.g.*, *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th
20 Cir. 2006) (internal citations omitted) ("[B]ecause 'the relevance of . . . [destroyed] documents
21 cannot be clearly ascertained because the documents no longer exist,' a party 'can hardly assert any
22 presumption of irrelevance as to the destroyed documents.'"); *Ramos*, 2017 WL 2857523, at *6 ("It
23 is reasonable to assume [defendant] Garcia's personnel file would at least have shed some light" on
24 the issues in dispute because "[w]ithout the file, the parties are left to speculate regarding its
25 contents.").

26 The present action is based upon alleged racial and religious discrimination. Plaintiff
27 contends that this evidence would have helped prove the existence of such discrimination.
28 Defendants deny that such discrimination occurred – accordingly, if they are correct, these notes

8

1  would have tended to either disprove (or at least would not have proven) such discrimination. As
2  such, regardless of which party's contentions are correct, ultimately these notes would have been
3  relevant to the claims in this case. Accordingly, the Court finds that Defendant Goldstein's personal
4  notes are relevant evidence in this case because they recorded Defendant Goldstein's mental state
5  and personal thoughts at the time of the events underlying the claims. *See Ramos*, 2017 WL
6  2857523, at *6 (finding that the defendant's missing personal file is relevant to matters central to
7  the plaintiff's claims.).
8        Putting aside the relevance of the notes to the issue of whether or not discrimination occurred
9  here, Defendant Goldstein's personal notes are also relevant for the additional reason that they
10 "could have potentially assisted the jury to [. . .] evaluate the credibility of the witnesses who are
11 providing conflicting descriptions" of the events underlying Plaintiff Gay's claims. *Pettit*, 45 F.
12 Supp. 3d at 1111. The notes are also unlikely to be duplicative of the official report, which further
13 underscores their potential relevance to Plaintiff Gay's claims. *See id.* at 1111 ("The fact that other
14 evidence about the incident is available does not diminish the relevance of the missing evidence.").
15       As a result, the Court finds that the loss of Defendant Goldstein's personal notes has deprived
16 Plaintiff Gay of evidence which is relevant to his claims.

### C. Whether non-Party BPH was Grossly Negligent in Failing to Preserve Relevant Evidence

      Culpability exists along a continuum and is thus analyzed on a case-by-case basis according to the specifics of a party's conduct. *A.G. by & through Galindo v. United States*, No. 23-CV-745 JLS (KSC), 2023 WL 7134927, at *5 (S.D. Cal. Oct. 30, 2023) (discussing the "continuum of culpability".). As such, culpability does not only encompass "bad faith" conduct, but it may also include any "willfulness or fault by the offending party." *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Co.*, 982 F.2d 363, 368 n. 2 (9th Cir. 1992) (citing *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir.1988)). Willfulness and fault are often broadly construed and can include many negligent and intentional acts which violate a duty to preserve relevant evidence. *See Pettit*, 45 F. Supp. 3d at 1112 (stating that the "adoption of an email management system that deletes stored emails after 30 days" was willful conduct for purposes of a spoliation analysis, "even if the

intentional action was not taken with an intent to destroy relevant information.").

Here, Plaintiff Gay argues that the "absence of any measures to ensure the preservation of Mr. Goldstein's Notes was, at a minimum, grossly negligent conduct on the part of the BPH." [Dkt. 111 at 4]. Defendants, on the other hand, claim that BPH "inadvertently destroyed" the notes, and allude to the periodic destruction of documents being a customary practice within the BPH. *Id.* at 6.

Based on the facts of this case, the Court is unconvinced that Defendants' alleged inadvertent destruction argument is sufficient to mitigate the culpability of BPH. Whether or not the destruction of the notes was accidental, it was certainly avoidable. Here, BPH was put on notice of pending litigation by September 2017 at the latest, when Defendants issued to BPH litigation hold notices concerning all relevant documents. [Dkt. 111 at 3, 6]. BPH failed to take the appropriate steps to carry out this litigation hold. Indeed, BPH was on notice of the duty to preserve and had actual notice of the litigation for a full two years before the notes were destroyed, and thus had more than ample time to take appropriate steps to preserve the notes. This is not a situation where the litigation hold was issued too late or with insufficient time to ensure the documents were preserved and exempted from any regular destruction process. Defendants proffer no detailed explanation why the notes were destroyed in September 2019, after they had been properly preserved for two years already. Dkt. 111 at 2; *see Ramos*, 2017 WL 2857523, at *13 (finding that a non-party was grossly negligent because they "failed to properly implement a litigation hold" issued by another party.). The Court finds that the fact that BPH had two years to properly implement this litigation hold, yet still failed to preserve the relevant evidence under its control, is particularly egregious. *See Ramos*, 2017 WL 2857523, at *6 ("That [defendant] Garcia's personnel file was likely shredded in March 2014 after plaintiffs had already served [the California Institution for Women] with a subpoena for the file is particularly egregious."). Over this two-year period, BPH failed to suspend or modify its policy of periodic document destruction, and thus the destruction of Defendant Goldstein's notes was certainly an avoidable breach of BPH's duty to preserve relevant evidence. *See Apple Inc.*, 888 F. Supp. 2d at 991–992 (finding that Samsung violated its duty to preserve relevant evidence by failing to suspend "its email system's biweekly automatic destruction policy" as well as "any

10

existing policies related to deleting or destroying files.").

The Court finds that BPH's undisputed receipt of the litigation hold notice in 2017; coupled with the length of time during which BPH enjoyed to correctly implement that litigation hold; further coupled with the fact that the litigation hold was not implemented despite ample time to do so; followed by the destruction of the notes at issue, where the destruction of the notes was an intentional act (where the intent was to comply with a document destruction program, as opposed to a destruction which occurred without intention, such as destruction which could have resulted from a natural disaster); where BPH undertook the destruction when it knew or should have known that the destruction would harm Plaintiff here because BPH had received the litigation hold notice; in sum, all amount to at least gross negligence. *See e.g.*, *Pettit*, 45 F. Supp. 3d at 1108–1111; *Ramos*, 2017 WL 2857523, at *6–7.

The Court therefore finds that non-party BPH acted in at least a grossly negligent (if not reckless) manner by failing to preserve the relevant evidence as discussed herein, and that such conduct thereby arises to the level of sanctionable spoliation.

## II.  WHETHER NON-PARTY BPH'S SPOLIATION MAY BE IMPUTED TO DEFENDANTS

"A non-party's spoliation of evidence may be imputed to a party who did not engage in spoliation." *Ramos*, 2017 WL 2857523, at *6. As explained above, non-party BPH spoliated relevant evidence in a grossly negligent manner, so the only remaining issue is whether non-party BPH's culpability for the destruction of relevant evidence may be imputed onto Defendants "to ensure that fairness is done at trial." *Pettit*, 45 F. Supp. 3d at 1110. In other words, the remaining issue is whether Defendants may be sanctioned for the actions of non-party BPH.

Resolution of this issue depends on (1) whether Defendants had an obligation to preserve relevant evidence at the time of destruction and (2) whether Defendants acted with a culpable state of mind when failing to prevent BPH from destroying the relevant evidence in question. *See e.g.*, *Pettit*, 45 F. Supp. 3d at 1108–1111; *Ramos*, 2017 WL 2857523, at *6–7.

### A.  Whether Defendants Had an Obligation to Preserve Relevant Evidence

As discussed at length above, a party's obligation to preserve relevant evidence generally

11

attaches "[a]s soon as a potential claim is identified, [whereby] a litigant is [then] under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d at 1067.

In the Parties' Joint Discovery Letter Brief, Defendants do not offer any arguments disputing that they had a duty to preserve evidence relevant to the litigation. [Dkt. 111]. Instead, Defendants dispute their culpability in the alleged spoliation and dispute the propriety of imputing non-party BPH's culpability to Defendants. *Id.* at 7–9. Plaintiff Gay argues that Defendant Goldstein "was under an automatic duty to preserve evidence when Plaintiff filed this action on October 17, 2016." *Id.* at 3.

The Court has considered Defendants' arguments and finds them unavailing. The Court finds that Defendants had an obligation to preserve evidence relevant to the present litigation, at least starting on October 17, 2016, if not sooner. In any event, that obligation existed at the time Defendants turned the notes over to BPH and existed during the entire time BPH had custody of the notes. More significantly, the Court further finds that this obligation existed at the time Defendant Goldstein's personal notes were destroyed. Specifically, Plaintiff Gay filed this suit in October 2016 and the notes in question were destroyed "around" September 2019. [Dkt. 111 at 1–2]. Notably, in May 2019, Plaintiff Gay served on Defendants a set of Requests for Production of documents ("RFPs") under Federal Rule of Civil Procedure 34 seeking "[a]ll Documents memorializing the Psychological Diagnostic Interview, including notes taken before, during and after, handwritten or otherwise." *Id.* These RFP's therefore explicitly sought the production of Defendant Goldstein's personal notes. As a result, Defendants were on notice of the litigation by no later than October 2016, and certainly were aware of the relevance of Defendant Goldstein's notes by May 2019 at the latest, when Plaintiff Gay served the RFP's. While the date of the RFPs is useful to establish the latest possible date that Defendants had notice of the relevance of the notes, the Court finds that Defendants had to have been aware of the relevance of Defendant Goldstein's personal notes several years prior to being served the RFP's in May 2019, because the notes clearly concerned matters central to Plaintiff Gay's allegations in the Complaint and would have shed some light on whether or not discrimination occurred here. *See Ramos*, 2017 WL 2857523, at *6 (finding that "[i]t is

reasonable to assume" that a missing personnel file of defendant, a prison warden, is relevant in a suit centered upon allegations of sexual misconduct by one of defendant's subordinates as it "would at least have shed some light on" whether defendant "may have [previously] been scrutinized for mishandling sexual misconduct cases.").

Thus, the Court finds that Defendants had an obligation to preserve relevant evidence, which includes Defendant Goldstein's personal notes, and further, that this obligation existed at the time these notes were destroyed by BPH.

### B. Whether Defendants Were Grossly Negligent in Failing to Prevent BPH's Spoliation of Evidence

The culpability analysis for Defendants is identical to the culpability analysis discussed above in relation to non-party BPH, which the Court incorporates by reference. As noted above, culpability exists along a continuum, and the primary focus here is upon Defendants' actions, or in this particular case, Defendants' inactions. *See A.G. by & through Galindo,* 2023 WL 7134927, at *11 ("'human conduct fits along a continuum which passes from totally innocent conduct through slight negligence, negligence, gross negligence, willful and wanton or reckless conduct, and finally to intentional misconduct.'") (internal citation omitted).

Plaintiff Gay argues that Defendants' failure to issue litigation holds until September 2017, about a year after litigation commenced, is conduct which amounts to a conscious disregard of Defendants' duty to preserve relevant evidence and is thus, at a minimum, grossly negligent conduct. [Dkt. 111 at 3–4].

On the other hand, Defendants argue that the Court should not impute BPH's spoliation of evidence to Defendants, on the grounds that Defendants did not personally "engage in any sanctionable conduct." [Dkt. 111 at 8]. Fundamentally, Defendants argument is circular: they argue that because they did not personally engage in sanctionable conduct, they should not be held responsible for sanctionable conduct of another party. The whole point of the imputation analysis is to determine whether or not a party should be held responsible for conduct they did not personally engage in. If Defendants were correct, then every party which did not personally engage in sanctionable conduct would be immune from imputed responsibility. This is legal error.

13

Defendants attempt to distinguish the present case from *Ramos*, and instead cite *Adkins v. Wolever*, 692 F.3d 499, 505 (6th Cir. 2012), for the proposition that imputation is improper when a defendant has "no culpability for the loss" of evidence. However, it should be noted that the *Ramos* Court found *Adkins* unpersuasive, as it involved a very particular factual situation in which the "evidence may have been lost before plaintiff even filed his complaint." *Ramos*, 2017 WL 2857523, at *6 (citing *Adkins*, 692 F.3d at 506). Here, the Court finds *Adkins* similarly unpersuasive and not analogous, because here the evidence was destroyed three years *after* Plaintiff Gay filed this complaint. [Dkt. 111 at 2].

Further, Defendants' argument in reliance on *Adkins* is not persuasive because, unlike the situation in *Adkins*, Defendants did in fact have some measurable culpability for the loss of evidence. Specifically, Defendants concede that they delayed sending litigation holds to BPH until September 2017, nearly a year after the last possible date Defendants' duty to preserve relevant evidence arose when Plaintiff filed this suit in October 2016. [Dkt. 111 at 6]. Had Defendants issued the litigation hold to BPH timely, that would have potentially given BPH almost an extra year in which to correctly implement the litigation hold. At a minimum, if Defendants had timely issued the litigation hold notice to BPH, that would have put BPH on up to approximately one year of extra notice about the litigation and the need to preserve evidence. The Court finds that the length of this nearly year-long delay in issuing litigation holds heightens the degree of Defendant's culpability regarding BPH's eventual destruction of relevant evidence. *See Apple Inc.*, 888 F. Supp. 2d at 998 ("By failing to do as little as issue a litigation hold notice to any employees for eight months after its preservation duty arose [. . .] the Court finds that Apple acted with not just simple negligence but rather conscious disregard of its duty to preserve."); *see also Ramos*, 2017 WL 2857523, at *5 ("Making 'some efforts' to preserve documents does not meet this obligation [to preserve documents]; implementation of a full litigation hold to ensure preservation of relevant documents is required.").

In the briefing on this motion, Defendants provide no persuasive evidence or argument to justify the delay of one year in issuing the litigation hold to BPH. Accordingly, the Court finds that Defendants acted with at least gross negligence in delaying the issuance of litigation holds to BPH. *See Apple Inc.*, 888 F. Supp. 2d at 998 (finding that an eight-month delay in issuing litigation holds

was more than mere negligence). Indeed, courts have routinely held that failing to promptly issue a litigation hold can support a finding of gross negligence. *See Surowiec*, 790 F. Supp. 2d at 1007 (finding that a failure to issue a litigation hold constituted gross negligence, on the grounds that the party "provided no reasonable explanation for its failure to preserve."); *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d at 1074 ("At best, however, Hummer was grossly negligent in executing its duties to preserve evidence, by failing to implement a litigation hold and instead relying on Napster to preserve Hummer's emails.").

Moreover, Defendants' argument against a finding of gross negligence based on the fact that the case had an "unusual first few months" with multiple venue changes is not persuasive. [Dkt. 111 at 6]. While the Court appreciates the procedural posture of the case at the time (where venue changed multiple times), there is no explanation which persuasively links a change in venue to the litigation hold notices. That is, under the law there is no relationship between the venue for an action and litigation holds – the latter are simply independent of the former. There is no legal doctrine which excuses the issuance of litigation holds based on venue. By necessity, a litigation hold is required whenever litigation is reasonably anticipated (much less filed) to preserve evidence for the case regardless of wherever it will be decided, and procedural disputes such as venue issues are not uncommon in the early stages of litigation. The Parties were on notice of the litigation since 2016. *Id*. Venue changes do not allow Defendants to evade their obligations related to simple preservation requirements, especially when they are on notice of the litigation. *See e.g., Surowiec*, 790 F. Supp. 2d at 1007 (finding Defendants were grossly negligent for failing to preserve evidence after a letter from Plaintiffs "clearly placed [Defendants] on notice that litigation was likely."); *Ramos*, 2017 WL 2857523, at *7 (failing to preserve evidence after being put on notice of pending litigation is "at a minimum [an act] of gross negligence.").

As a final matter, the Court finds that Defendants' delay regarding the preservation of relevant evidence is necessarily intertwined with BPH's destruction of the evidence. Defendants argue that they have no culpability for the loss of evidence, because the notes were in BPH's custody and BPH personally destroyed the notes. [Dkt. 111 at 8]. As noted, this is a circular argument which would create an end-run around any cases involving imputation of spoliation by a non-party

to a party. Further, to the extent Defendants attempt to ignore or minimize the relevance of their failure to promptly issue litigation holds to BPH (because BPH was the party who destroyed the documents), as discussed above the delay of about a year raises serious questions about whether BPH would have or could have properly implemented the litigation hold if given more time. The litigation hold would have been the very mechanism by which BPH was on actual notice that their standard policy of periodic destruction of documents should be suspended with respect to all litigation-relevant documents. Accordingly, Defendants' failure to timely and adequately comply with their own preservation duties inevitably increased the likelihood of BPH destroying relevant evidence. Fundamentally, Defendants' circular argument would lead to the legally unsupported result that a Defendant would never be held responsible for any unrelated third-party conduct, for the overly simplistic reason that the Defendants own conduct was not at issue. As a matter of law, Defendants' argument is not persuasive.

Accordingly, the Court finds that Defendants were at the very least grossly negligent in failing to take adequate measures to meet their duty to preserve relevant evidence, and thus, the Court finds that non-party BPH's culpability for the destruction of relevant evidence is properly imputed to Defendants based on the facts of this case. As a result, Defendants may be sanctioned for non-party BPH's spoliation of evidence.

### III. WHETHER ADVERSE INFERENCE JURY INSTRUCTIONS ARE WARRANTED

Based on the analysis above, sanctions are warranted to ensure that fairness is done at trial and to ensure that Plaintiff Gay does not bear the entire burden of the lost evidence. *See e.g.*, *Pettit*, 45 F. Supp. 3d at 1110. Having found sanctions to be appropriate, the Court next turns to the issue of what form of sanctions are appropriate.

The Ninth Circuit has held that sanctions in general may be imposed "not only for bad faith, but also for willfulness or fault by the offending party." *Unigard Sec. Ins. Co.*, 982 F.2d at 368. However, the Ninth Circuit has also made it clear that case-dispositive sanctions should be premised only upon "bad faith" or "willful" conduct, rather than mere negligent conduct. *See Leon*, 464 F.3d at 955 (affirming a dismissal sanction based on "bad faith" conduct); *Anheuser-Busch v. National Beverage Distrib.*, 69 F.3d 337, 348 (9th Cir. 1995) (affirming a dismissal sanction based on

"willfully" violating the rules of discovery); *Halaco Eng'g Co.*, 843 F.2d at 380–381 (reversing a dismissal sanction because the "fault at issue was insufficient to support a dismissal.").

Here, Plaintiff Gay requests sanctions including an order precluding Defendants from testifying about the contents of the destroyed notes, and the issuance of an adverse inference jury instruction which would inform the jury that they "must [. . .] accept as true that Mr. Goldstein's notes taken during the psychological interview of Plaintiff contained racially and religiously discriminatory comments." [Dkt. 111 at 4]. Defendants argue that such sanctions would amount to a case-dispositive order, and instead propose that, if any adverse inference instruction is to be issued, it should "not be harsher than the instruction in *Pettit*." *Id.* at 9. Specifically, Defendants request that the Court allow both Plaintiff Gay and Defendants to present evidence regarding Defendant Goldstein's notes, and that the Court should instruct the jury that they "may, but are not required to, infer that the lost evidence would have been favorable to Plaintiff." *Id*.

Here, the Court finds that while Defendants acted with gross negligence regarding their duty to preserve relevant evidence, they did not conduct themselves in a manner commensurate with the potentially case-dispositive sanctions requested by Plaintiff Gay. Adverse inference jury instructions which fall short of case-dispositive orders can be predicated upon lower degrees of culpability, including the kind of gross negligence displayed here by Defendants. *See e.g., Ramos*, 2017 WL 2857523, at *14 ("The level of harshness [of the adverse inference jury instruction] should be commensurate with the egregiousness of the conduct."). As an example, the *Ramos* Court, upon a finding of gross negligence, held that an appropriate adverse inference jury instruction could either permit *or* require a "jury to *presume* that the lost evidence is both relevant and favorable to" the non-spoliating party, but without a finding of a higher degree of culpability, it would not be appropriate to instruct the jury "that certain facts are deemed admitted and *must* be accepted as true." *Ramos*, 2017 WL 2857523, at *14 (emphasis added); *see also Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1150 (N.D. Cal. 2012) ("*Apple Inc. II*") ("'[A]n adverse inference instruction can take many forms [. . .] ranging in degrees of harshness,'" and this degree of harshness turns on the egregiousness of the conduct.) (internal citation omitted). Given the similarity of *Ramos* to the present case, the Court finds that a similar instruction is warranted here.

17

Accordingly, the Court hereby **ORDERS** the following sanction for the spoliation imputed to Defendants:

Plaintiff Gay shall be entitled to an adverse inference jury instruction to the trier of fact at the time of trial as the result of the spoliation discussed herein. The instruction shall state, in sum, that Defendant Goldstein wrote personal notes about Plaintiff Gay's Comprehensive Risk Assessment contemporaneous with that assessment; that Defendants had a duty to preserve Defendant Goldstein's notes as evidence for this case; that Defendant Goldstein's notes were destroyed; and that the jurors may, but are not required to, conclude and presume that these destroyed notes are relevant and contain information favorable to Plaintiff and thus unfavorable to Defendants.

## CONCLUSION

Accordingly, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Plaintiff Gay's motion for sanctions as a result of the alleged spoliation by Defendants.

**IT IS SO ORDERED.**

Dated: September 17, 2024

PETER H. KANG
United States Magistrate Judge