Kevin B. Frankel (CA 277840)
Shaneeda Jaffer (CA 253449)
Benesch, Friedlander, Coplan & Aronoff LLP
100 Pine Street, Suite 3100
San Francisco, California 94111
Telephone:   628.600.2250
Facsimile:    628.221.5828
kfrankel@beneschlaw.com

*Attorneys for Plaintiff Omar Sharrieff Gay*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR SHARRIEFF GAY,<br><br>Plaintiff,<br><br>vs.<br><br>AMY PARSONS, et al.,<br><br>Defendants. | CASE NO. 3:16-cv-05998-JCS<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO EXCLUDE DEFENDANTS' EXPERT DR. CRAIG LAREAU**<br><br>Hearing: June 10, 2026<br>Time: 9:30 a.m.<br>Crtm.: D – 15th Floor<br><br>Complaint Filed: October 17, 2016<br><br>Honorable Joseph C. Spero |

**TO THE COURT, THE PARTIES AND THEIR COUNSEL:**

**PLEASE TAKE NOTICE THAT ON** June 10, 2026, at 9:30 a.m. or as soon thereafter as counsel may be heard, in Courtroom D, 15th Floor, 450 Golden Gate Avenue in San Francisco, CA 94102 before the Honorable Joseph C. Spero, Plaintiff Omar Gay ("Mr. Gay") will, and hereby does, move to exclude Dr. Craig Lareau under Federal Rule of Evidence 702.

Mr. Gay requests the Court exclude the testimony of Dr. Craig Lareau in its entirety. In the alternative, Mr. Gay requests the Court exclude the testimony of Dr. Craig Lareau concerning whether any discrimination occurred during the 2015 psychological diagnostic evaluation or the Comprehensive Risk Assessment and regarding the character and motive of Mr. Gay.

Mr. Gay bases this motion on the accompanying Memorandum of Points and Authorities, all pleadings and papers on file in this action, oral arguments as permitted by the Court, and any other matters that the Court deems appropriate.

Date: April 20, 2026

By: */s/ Kevin Frankel*
KEVIN B. FRANKEL (CA 277840)
Benesch, Friedlander, Coplan & Aronoff LLP
100 Pine Street, Suite 3100
San Francisco, California 94111
Telephone: 628.600.2250
Facsimile: 628.221.5828
Email: kfrankel@beneschlaw.com

*Attorney for Omar S. Gay*

i
PLAINTIFF'S NOTICE OF MOTION AND MOTION TO EXCLUDE DEFENDANTS'
EXPERT DR. CRAIG LAREAU

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 1

    A.    Mr. Gay Files a Lawsuit and Defendants Offer Proposed Expert Dr. Craig Lareau ...................................................................................................................... 2

III.  LEGAL STANDARD ..................................................................................................... 3

IV.   LEGAL ARGUMENT .................................................................................................... 4

    A.    Dr. Lareau's Purported Opinion Testimony Improperly Impedes the Prerogative of the Jury by Making Factual Findings and Will Not Assist the Trier of Fact ...................................................................................................... 4

    B.    Dr. Lareau is Not An Expert on Discrimination ......................................... 5

    C.    Dr. Lareau's Methodology is Not Sound for Either Opinion ..................... 6

    D.    Dr. Lareau Improperly Attacks the Character and Motive of Mr. Gay ..... 8

V.    CONCLUSION ............................................................................................................... 9

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO EXCLUDE DEFENDANTS' EXPERT DR. CRAIG LAREAU

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AIG Ret. Servs., Inc. v. Altus Fin. S.A.*,
No. CV 05-1035-JFW, 2011 WL 13213589 (C.D. Cal. Sept. 26, 2011) ................................. 7

*Arjangrad v. JPMorgan Chase Bank, N.A.*,
No. 3:10-CV-01157-PK, 2012 WL 1890372 (D. Or. May 23, 2012) ...................................... 5

*Bunker v. Ford Motor Co.*,
640 Fed. App'x 661 (9th Cir. 2016) ...................................................................................... 5-6

*C.N. v. Wolf*, No. SACV 05-868 JVS(MLG),
2006 WL 5105270, at *1 (C.D. Cal. Nov. 13, 2006) ......................................................... 4, 5

*Cabrera v. Cordis Corp.*,
134 F.3d 1418 (9th Cir. 1998) .................................................................................................. 4

*City of Pomona v. SQM N. Am. Corp.*,
750 F.3d 1036 (9th Cir. 2014) .................................................................................................. 7

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ............................................................................................................. 3, 4

*Est. of Casillas v. City of Fresno*, No. 1:16-CV-1042 AWI-SAB,
2019 WL 586747, at *7 (E.D. Cal. Feb. 13, 2019) .............................................................. 8, 9

*In re Ford Tailgate Litig.*,
No. 11-cv- 02953, 2015 WL 7571772 (N.D. Cal. Nov. 25, 2015) ........................................... 5

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) .................................................................................................................. 6

*GPNE Corp. v. Apple, Inc.*,
No. 12-CV-02885-LHK, 2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) .................................. 7

*Highland Capital Mgmt., L.P. v. Schneider*,
551 F.Supp.2d 173 (S.D.N.Y.2008) ......................................................................................... 5

*Koger v. Costco Wholesale Corp.*,
No. 3:20-CV-08759-JD, 2023 WL 8188842 (N.D. Cal. Nov. 27, 2023) .................................. 4

*Lassalle v. McNeilus Truck & Mfg., Inc.*,
No. 16-cv-00766-WHO, 2017 WL 3115141 (N.D. Cal. July 21, 2017) ................................... 4

*Morgutia-Johnson v. Hustedde*,
No. 1:14-CV-00127-LJO, 2015 WL 3507130 (E.D. Cal. June 3, 2015) ................................. 9

ii

*Mullins v. Premier Nutrition Corp.*,
178 F. Supp. 3d 867 (N.D. Cal. 2016) ......................................................................... 6

*Ollier v. Sweetwater Union High School Dist.*,
267 F.R.D. 339 (S.D. Cal. 2010) ................................................................................. 6

*Pecover v. Elec. Arts Inc.*,
No. C 08-2820 VRW, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) ......................... 7

*Primiano v. Cook*,
598 F.3d 558 (9th Cir. 2010) ....................................................................................... 6

*U.S. v. 99.66 Acres of Land*,
970 F.2d 651 (9th Cir. 1992) ....................................................................................... 3

*U.S. v. Sandoval-Mendoza*,
472 F.3d 645 (9th Cir. 2006) ....................................................................................... 6

*United States v. Candoli*,
870 F.2d 496 (9th Cir. 1989) .................................................................................... 8-9

*United States v. Christophe*,
833 F.2d 1297 (9th Cir. 1987) ..................................................................................... 4

*United States v. Diaz*,
876 F.3d 1194 (9th Cir. 2017) ..................................................................................... 4

*United States v. Duncan*,
42 F.3d 97 (2d Cir. 1994) .......................................................................................... 4-5

*United States v. Valencia-Lopez*,
971 F.3d 891 (9th Cir. 2020) ....................................................................................... 3

*United States v. Vallejo*,
237 F.3d 1008 (9th Cir. 2001), *amended by* 246 F.3d 1150 (9th Cir. 2001) ............. 4

*Ward v. Westland Plastics, Inc.*, 651 F.2d 1266 (9th Cir. 1980)
651 F.2d 1266 (9th Cir. 1980) *abrogated on other grounds by* 450 U.S. 248
(1981) ........................................................................................................................... 4

**Rules**

Fed. R. Civ. P. 26(a)(2)(B) ................................................................................................. 4

Fed. R. of Evid. 702 ....................................................................................................... 3, 6

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO EXCLUDE DEFENDANTS'
EXPERT DR. CRAIG LAREAU AND STRIKE DR. CRAIG LAREAU'S DECLARATION

## I.    INTRODUCTION

The Defendants' proffered expert, Dr. Craig Lareau, is a friend and former colleague of both Defendants who lacks any relevant expertise in the areas on which he purports of offer expert testimony. Dr. Lareau should be excluded from testifying for three independent reasons:

First, his purported opinions are merely commentary on factual issues reserved for the jury. Rather than applying specialized knowledge to assist the trier of fact, he draws conclusions about what the evidence shows—an assessment squarely within the jury's domain. For example, his opinion that there was no racial discrimination is a factual conclusion disguised as expert testimony. Likewise, his opinion regarding the sufficiency of Mr. Gay's "high risk" designation simply repeats the conclusions of the Comprehensive Risk Assessment ("CRA") without conducting any independent analysis. He admits that he accepted the facts in the CRA as true without independent verification or research. These are factual determinations for the jury. Cloaking them in the label of "expert opinion" improperly suggests added authority.

Second, Dr. Lareau's report reflects no reliable scientific or technical methodology. Without a demonstrable methodology grounded in reliable principles, his opinions fail to meet the threshold requirements for admissibility. He identifies no governing principles, analytical framework, or specialized methods applied to the facts of this case. His opinion on the absence of racial discrimination rests entirely on the observation that the CRA's conclusions do not explicitly reference race or religion and on a subjective "you'll know it when you see it" approach. He admitted he has no specialized training or expertise in detecting discrimination, yet that is precisely the subject on which he seeks to opine. His analysis requires nothing more than reading the report—something the jury is fully capable of doing without expert assistance.

Third, to the extent Dr. Lareau proposes to offer opinions regarding Mr. Gay's character, credibility, or motives, such testimony would be improper and must be excluded in its entirety. Expert testimony cannot be used to assess a party's character or intent. Those determinations are reserved exclusively for the jury.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Mr. Gay was formerly incarcerated at the California Training Facility ("CTF") in Soledad,

1

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO EXCLUDE DEFENDANTS'
EXPERT DR. CRAIG LAREAU

California until he was paroled in 2022. In September 2015, while in CTF custody, the Defendants at the California Board of Parole Hearings ("Board") conducted a psychological diagnostic evaluation of Mr. Gay to prepare a Comprehensive Risk Assessment ("CRA") report for Mr. Gay's parole suitability hearing. Dkt. 88-2 ¶ 5.

During this interview and assessment, Defendants asked Mr. Gay discriminatory questions such as "[w]hy do you hate white people and Jews?"; "[w]hat particular ideology do you follow? Malcolm X? Louis Farrakhan? Osama bin Laden?"; and whether Mr. Gay was taught "[a] lot of that militant garbage and nonsense like Black Power, Black Pride, and smashing up Jewish liquor stores . . . ?" *Id*. at ¶¶ 9, 12. Defendants referred to him as a "radical Black Islamic terrorist [sic]." *Id*. ¶ 11. When Mr. Gay responded to a question about whether he thought highly of himself by saying that he had "self-esteem not conceit," Defendant Goldstein asked, "is that the sort of teachings you learned from those criminals and Black Nationals growing up as a child?" *Id*. ¶ 12. Defendant Goldstein characterized African-American Muslims as "a bunch of gorillas and thugs in suits and bow ties." Dkt. 134-2 at ¶ 12.

Defendants repeatedly asked Mr. Gay to justify the basis for his religious beliefs despite religion being irrelevant to the question of risk for violence. Dkt. 88-2. at 2-4. When Defendants were not satisfied with Mr. Gay's answer for why he chose to adopt Islam, Defendants used that as a basis to determine that he posed a high risk for future violence. Ultimately, Defendants unfairly concluded that Mr. Gay's conversion to Islam, his father's faith, meant that Mr. Gay would blindly commit himself to any cause. *Id*. ¶ 16. This conclusion was premised on improper racial and religious biases held by Defendants.

### A. Mr. Gay Files a Lawsuit and Defendants Offer Proposed Expert Dr. Craig Lareau

On October 17, 2016, Mr. Gay filed a *pro se* complaint against Jennifer Shaffer (Secretary of BPH), Cliff Kusaj (Chief Psychologist at BPH), Amy Parsons (Senior Psychologist Supervisor at BPH), and Gregory Goldstein (Forensic Psychologist at BPH), alleging claims for retaliation

2

and violation of the Equal Protection Clause. Dkt. 1.[1] Eight years later, on March 19, 2024, Defendants disclosed Dr. Craig Lareau as their expert witness and submitted his expert report. Dkt 133-1 ¶ 2, Ex. 1 ("Report"). Dr. Lareau is currently a Senior Psychologist-Supervisor at the California Board of Parole Hearings, Forensic Assessment Division. Ex. 1 at CV, p. 2. He is a colleague of Defendants. Dr. Lareau provides two opinions: (1) "In a review of the CRA at issue, there is no evidence of racial discrimination or religious discrimination" (the "First Opinion"); and (2) "[u]pon review of the information that was available to Dr. Goldstein at the time of the 2015 CRA, it is concluded that Dr. Goldstein's overall conclusion of high risk was reasonable" (the "Second Opinion"). Report at 2.

Defendants offered Dr. Lareau's opinions as factual support for their Motion for Summary Judgment [Dkt. 124], but later withdrew that motion [Dkt. 136 at 1]. It is Mr. Gay's understanding that Defendants intend to call Dr. Lareau as an expert witness at trial. Because Dr. Lareau's opinions are inadmissible, the Court should exclude his testimony and opinions.

## III.    LEGAL STANDARD

Federal Rule of Evidence 702 requires trial courts to function as gatekeepers by excluding expert testimony that is not relevant or reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *United States v. Valencia-Lopez*, 971 F.3d 891, 897-902 (9th Cir. 2020). This gatekeeping role, which the advisory committee "clarif[ied] and emphasize[d]" in the 2023 amendments, requires the court to decide "critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology"; and, when appropriate, exclude them rather than giving them less weight. Advisory Com. Notes to Fed. R. Evid. 702.

Courts exclude testimony if an expert does not have the requisite knowledge, skill, experience, training, or education on the particular subject. *See, e.g.*, *U.S. v. 99.66 Acres of Land*, 970 F.2d 651, 657 (9th Cir. 1992) (accountant unqualified where he lacked "appraisal experience and had never conducted a discounted cash flow analysis of real estate"). To be sufficiently

---

[1] Shaffer and Kusaj were dismissed from the case on June 28, 2017. Dkt. 16.

3

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO EXCLUDE DEFENDANTS'
EXPERT DR. CRAIG LAREAU AND STRIKE DR. CRAIG LAREAU'S DECLARATION

reliable, the reasoning or methodology underlying the testimony must be scientifically valid and properly applied to the facts in issue. *Daubert*, 509 U.S. at 592-93; *see also* Fed. R. Civ. P. 26(a)(2)(B) (requiring "basis and reasons for" expert's opinion and "facts or data considered"). "[E]xpert testimony relying on undisclosed or poorly described methodology must be excluded, because opinions based on 'unsubstantiated and undocumented information is the antithesis of . . . [a] scientifically reliable expert opinion.'" *Koger v. Costco Wholesale Corp.*, No. 3:20-CV-08759-JD, 2023 WL 8188842, at *2 (N.D. Cal. Nov. 27, 2023) (quoting *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998)).

## IV.    LEGAL ARGUMENT

### A.    Dr. Lareau's Purported Expert Testimony Improperly Invades the Jury's Role and Will Not Assist the Trier of Fact

Expert testimony is unnecessary when the subject matter falls within the common knowledge of the fact finder. *United States v. Christophe*, 833 F.2d 1297, 1299 (9th Cir. 1987). Expert testimony is not helpful—and therefore not relevant—when it addresses an issue within "the common knowledge of the average layman." *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001), *amended by* 246 F.3d 1150 (9th Cir. 2001). An expert may not offer a personal or "common sense" opinion, even if informed by experience. *Lassalle v. McNeilus Truck & Mfg., Inc.*, No. 16-cv-00766-WHO, 2017 WL 3115141, at *5 (N.D. Cal. July 21, 2017) (excluding expert's "common sense" opinion). Additionally, "[e]xperts are generally not allowed to testify as to whether particular conduct is discriminatory." *C.N. v. Wolf*, No. SACV 05-868 JVS(MLG), 2006 WL 5105270, at *1 (C.D. Cal. Nov. 13, 2006) (citing *Ward v. Westland Plastics, Inc.*, 651 F.2d 1266, 1270-71 (9th Cir. 1980) *abrogated on other grounds by Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248 (1981)).

Experts are likewise prohibited from offering legal conclusions or opinions on ultimate issues of law. *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017). "This prohibition of opinion testimony on an ultimate issue of law recognizes that, '[w]hen an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision but rather attempts to substitute the expert's judgment for the jury's.'" *Id*. (citing *United States v. Duncan*, 42 F.3d 97,

4

101 (2d Cir. 1994)). "An expert may offer factual conclusions that embrace an ultimate factual issue to be decided, **but may not state ultimate legal conclusions, such as whether discrimination occurred**." *Arjangrad v. JPMorgan Chase Bank*, *N.A.,* No. 3:10-CV-01157-PK, 2012 WL 1890372, at *7 (D. Or. May 23, 2012) (citing *Highland Capital Mgmt., L.P. v. Schneider*, 551 F.Supp.2d 173, 179 (S.D.N.Y.2008) (emph. added).

Dr. Lareau's First Opinion—concerning the absence of discrimination—is not admissible because the jury is as well-equipped as Dr. Lareau to identify direct discrimination and indirect discrimination. An average juror can review the text of the 2015 CRA and determine whether it contains statements linking race or religion to violence. *See* Dr. Lareau Dep. Tr. at 63:19-64:9. Additionally, an average layman is just as capable of employing Dr. Lareau's so-called "you know it when you see it" "methodology." *Id.* at 27:9-21; 64:10-13. Because Dr. Lareau's First Opinion requires no specialized knowledge, it falls squarely within the common understanding of the jury and should be excluded. Further, such opinions are inherently contrary to the valid use of an expert opinion and should not be allowed. *See C.N.*, 2006 WL 5105270, at *1.

Dr. Lareau's Second Opinion suffers from the same defect. His Report attempts to recast a factual conclusion—namely, that "the conclusions were reasonable"—as expert analysis. Rather than provide an opinion on, for example, appropriate methodologies for conducting a review for a CRA, Dr. Lareau merely repeats the factual assertions made in the CRA and concludes that it was reasonable to find Mr. Gay a high risk. Determining whether those conclusions are reasonable, based on the facts presented in the CRA, is a task well within the jury's competence. Dr. Lareau offers no specialized methodology or expert insight that would assist the jury in making that determination.

### B.    Dr. Lareau is Not an Expert on Discrimination

Relatedly, Dr. Lareau should be excluded from offering the First Opinion because he admits he is not an expert on discrimination. "Even the most qualified expert cannot offer any opinion on any subject." *In re Ford Tailgate Litig.*, No. 11-cv- 02953, 2015 WL 7571772, at *6 (N.D. Cal. Nov. 25, 2015); *see also Bunker v. Ford Motor Co.*, 640 Fed. App'x 661, 662 (9th Cir. 2016) (excluding expert opinion where expert admitted they lacked expertise in relevant subject);

5

*Ollier v. Sweetwater Union High School Dist.*, 267 F.R.D. 339, 342 (S.D. Cal. 2010) (exclusion warranted where knowledge did not apply to "the relevant issue").

Dr. Lareau is not a discrimination expert and admitted to having **no specialized knowledge pertaining to discrimination.** Dr. Lareau Dep. Tr. at 18:10-12 (he has never been retained as an expert in a racial or religious discrimination case); 27:9-21 (he took law courses on discrimination and taught post doc fellows about bias but "wouldn't call it necessarily . . . training in racial discrimination"). While his professional responsibilities include supervising Comprehensive Risk Assessments (CRAs) for clinical soundness, he is not trained or experienced in identifying discrimination. *See* Dr. Lareau Dep. Tr. at 18:1-12; 27:9-21.

Despite lacking the requisite "knowledge, skill, experience, training, or education" to opine on discrimination, Dr. Lareau offers the sweeping conclusion that, "in a review of the CRA at issue, there is no evidence of racial discrimination or religious discrimination." Report at 2; *see Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 900 (N.D. Cal. 2016) ("To be able to testify, however, expert witnesses must describe their relevant background and explain how that background informed the opinions they offer."). Dr. Lareau's admitted lack of specialized knowledge or training in identifying discrimination renders his First Opinion inadmissible.

**C.    Dr. Lareau's Methodology is Not Sound for Either Opinion**

Even if the Court were to accept that Dr. Lareau's position as a Senior Psychologist confers some specialized knowledge, his First Opinion is still inadmissible because it fails to apply any reliable foundation or methodology. Expert testimony is reliable only "if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (quoting *U.S. v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)). An expert who relies solely or primarily on his experience "must explain how that experience leads to the conclusions reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 Advisory Committee's Note (2000); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (explaining that expert opinions cannot be "connected to existing data only by the *ipse dixit* of the expert"); *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (expert opinion cannot

6

be deemed reliable under FRE 702 if it is "connected to existing data only by the ipse dixit of the expert."); *AIG Ret. Servs., Inc. v. Altus Fin. S.A.*, No. CV 05-1035-JFW (CWx), 2011 WL 13213589, at *4 (C.D. Cal. Sept. 26, 2011) (excluding expert who failed to explain how his experience lead to certain conclusions reached, why that experience is a sufficient basis for certain opinions, and how that experience is reliably applied to the facts).

Dr. Lareau employed no sound methodology in forming his First Opinion on discrimination. He testified that he reviewed the 2015 CRA for evidence of "direct" and "indirect" discrimination. Dr. Lareau Dep. Tr. at 63:19-64:24. His method for identifying direct discrimination consisted of scanning the Report for any explicit statement linking Mr. Gay's race or religion to the potential for violence. *Id.* at 63:19-64:9. Dr. Lareau fails to even identify which specific words he was looking for in his read of the Report that would have qualified as evidence of direct discrimination.

His approach to indirect discrimination was even less rigorous. He described it as essentially a "you know it when you see it" method. *Id.* at 27:9-21("how to recognize racial discrimination is more kind of the – it's kind of like obscenity in the law, you know it when you see it, for the most part."); 64:10-13 ("Q: And an indirect finding, does that go back to what you said previously in this deposition that once you see it you know it's discrimination? A: Yes, right . . .").

This subjective standard—untethered to any recognized principles, testing criteria, or replicable process—is precisely the kind of ipse dixit reasoning that *Daubert* prohibits. *See, e.g.*, *GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885-LHK, 2014 WL 1494247, at *5 (N.D. Cal. Apr. 16, 2014) (excluding expert where the analysis was an impossible black box and admitted there is no methodology other than his length of experience in the field); *Pecover v. Elec. Arts Inc.*, No. C 08-2820 VRW, 2010 WL 8742757, at *7 (N.D. Cal. Dec. 21, 2010) (excluding expert's opinion that was only connected to existing date by the *ipse dixit* of the expert as the expert provided no methodology).

Neither of Dr. Lareau's approaches reflects a reliable, testable, or specialized methodology. This type of methodology is inherently not replicable and lacks any requirement for specialized training. Neither "methodology" passes muster under a *Daubert* analysis.

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO EXCLUDE DEFENDANTS' EXPERT DR. CRAIG LAREAU AND STRIKE DR. CRAIG LAREAU'S DECLARATION

The same deficiencies infect his Second Opinion. Rather than evaluating whether Dr. Goldstein followed appropriate **procedures** in preparing the CRA, Dr. Lareau focused solely on whether the **conclusions** seemed reasonable. The Board of Parole Hearings publishes a Parole Hearing Process Handbook that contains information on the appropriate process for conducting and preparing a CRA. Board of Parole Hearings, The California Parole Hearing Process Handbook (March 8, 2024), *available at https://www.cdcr.ca.gov/bph/wp-content/uploads/sites/161/2025/03/CA-Parole-Hearing-Process-Handbook-For-Publication-03-08-24-2.pdf*. The Handbook specifies that an individual preparing a CRA should review a prisoner's "prison record and criminal history," as well as interview the prisoner if possible. *Id.* § 2.15. Dr. Lareau failed to follow this acceptable methodology for reaching CRA conclusions. First, he never interviewed Mr. Gay, instead relying entirely on someone else's interview notes. Second, he admitted that his conclusions assumed "the factual information in doctor Goldstein's report was accurate," which he admitted was a "major caveat" to his conclusions. Dr. Lareau Dep. Tr. at 34:25-35:2.

Accepting another evaluator's account at face value and declaring the resulting conclusions "reasonable" is not a reliable methodology. It is simply an unsubstantiated endorsement of a colleague's work, unsupported by independent analysis or established standards. Because Dr. Lareau's opinions are not grounded in any reliable principles or methods, his testimony fails under Rule 702 and *Daubert* and should be excluded in its entirety.

**D.    Dr. Lareau Improperly Attacks the Character and Motive of Mr. Gay**

Finally, Dr. Lareau improperly attacks Mr. Gay's character, motive, and credibility by calling Mr. Gay a liar in his Report. Report at 4. It is well-established that an expert may not opine on a witness's credibility. *Est. of Casillas v. City of Fresno*, No. 1:16-CV-1042 AWI-SAB, 2019 WL 586747, at *7 (E.D. Cal. Feb. 13, 2019) ("Any attempt by Mr. Harmening to establish these facts, or opine on a witness's credibility, under the moniker of 'expert' would usurp the province of the jury, is of little probative value, presents a danger of misleading the jury, and must be excluded.") (citing *United States v. Candoli*, 870 F.2d 496, 506 (9th Cir. 1989) (an expert witness is not permitted to testify specifically to a witness'[s] credibility or to testify in such a manner as

8

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO EXCLUDE DEFENDANTS'
EXPERT DR. CRAIG LAREAU AND STRIKE DR. CRAIG LAREAU'S DECLARATION

to improperly buttress a witness'[s] credibility)); *see also Morgutia-Johnson v. Hustedde*, No. 1:14-CV-00127-LJO, 2015 WL 3507130, at \*5 (E.D. Cal. June 3, 2015) ("Dr. Wagner may not testify that another person was in fact credible or opine that the jury should find another witness credible.").

As in *Morguita-Johnson*, Dr. Lareau's opinions concerning Mr. Gay's credibility should be excluded. When asked in his deposition whether he knew whether Defendants made discriminatory comments during the 2015 CRA interview, Dr. Lareau admitted: "[t]heoretically anybody could have said anything and it could have been cloaked from a later work product. Unless you were in the room, nobody knows what actually was said. But there is some information regarding quotes and things like that which provide a report of what was said contemporaneous to the time. But I don't know what was said . . . the people that were in the room know, but nobody else." Dr. Lareau Dep. Tr. at 62:17-63:18.

Despite conceding that he lacked personal knowledge of the conversation, Dr. Lareau's Report offered the opinion that Mr. Gay's recitation of what was said in the room was a lie. Report at 4 ("it may be more likely that Mr. Gay may have not been accurate in his description of events."). Dr. Lareau attempt, during his deposition, to clean up this statement failed as his own "clarifications" make clear he was opining on Mr. Gay's veracity. Dr. Lareau Dep. Tr. 79:9-80:15 ("offering a comment regarding the relative likelihood of a version of events" and "when looking at the consequences of the allegations it appears more likely that, given the potential consequences, that Mr. Gay may not have been accurate.").

The substance of Dr. Lareau's opinion remains a credibility determination. He weighs competing accounts and concludes that Mr. Gay is less likely to be truthful than his colleagues, the defendants. This is the exact type of witness credibility assessment that courts have found to "usurp the province of the jury, is of little probative value, presents a danger of misleading the jury, and must be excluded." *Est. of Casillas*, 2019 WL 586747, at \*7. Dr. Lareau should therefore be prohibited from offering any opinion regarding Mr. Gay's credibility or truthfulness.

## V.   **CONCLUSION**

Dr. Lareau lacks the requisite specialized knowledge and experience to opine on the

9

subjects in his Report, failed to employ a sound methodology that would assist the trier of fact, and offers a factual conclusion squarely in the purview of the jury. Accordingly, Mr. Gay respectfully requests that the Court exercise its critical gate-keeping role and exclude the opinions and testimony of Defendants' proffered expert, Dr. Lareau.

In the alternative, Mr. Gay requests that the Court exclude any testimony from Dr. Lareau concerning whether any discrimination occurred during the 2015 psychological diagnostic evaluation or the Comprehensive Risk Assessment, as well as any opinions regarding Mr. Gay's character and motives.

Date: April 20, 2026                    Respectfully submitted,


By: /s/ Kevin Frankel
　　　KEVIN B. FRANKEL (CA 277840)
　　　Benesch, Friedlander, Coplan & Aronoff LLP
　　　100 Pine Street, Suite 3100
　　　San Francisco, California 94111
　　　Telephone: 628.600.2250
　　　Facsimile: 628.221.5828
　　　 Email:    kfrankel@beneschlaw.com

　　　*Attorneys for Omar S. Gay*

10
PLAINTIFF'S NOTICE OF MOTION AND MOTION TO EXCLUDE DEFENDANTS' EXPERT DR. CRAIG LAREAU AND STRIKE DR. CRAIG LAREAU'S DECLARATION

**CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2026, I electronically filed the foregoing document entitled **PLAINTIFF'S NOTICE OF MOTION AND MOTION TO EXCLUDE DEFENDANTS' EXPERT DR. CRAIG LAREAU** with the Clerk of the Court for the United States District Court, Northern District of California using the CM/ECF system and served a copy of same upon all counsel of record via the Court's electronic filing system.

/s/ Kevin Frankel
Kevin Frankel

CERTIFICATE OF SERVICE