Kevin B. Frankel (CA 277840)
Shaneeda Jaffer (CA 253449)
Elizabeth Snow (Admitted *Pro Hac Vice*)
Grace McElroy (CA 366719)
Benesch, Friedlander, Coplan & Aronoff LLP
100 Pine Street, Suite 3100
San Francisco, California 94111
Telephone: 628.600.2250
Facsimile: 628.221.5828
kfrankel@beneschlaw.com

*Attorneys for Plaintiff Omar Sharrieff Gay*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR SHARRIEFF GAY,<br><br>Plaintiff,<br><br>vs.<br><br>AMY PARSONS, et al.,<br><br>Defendants. | CASE NO. 3:16-cv-05998-JCS<br><br>**PLAINTIFF OMAR SHARRIEFF GAY'S TRIAL BRIEF**<br><br>Date: August 12, 2026<br>Time: 2 p.m.<br>Courtroom: D—15th Floor<br>Trial Date: September 22, 2026<br>Action Filed: October 17, 2016<br><br>Hon. Joseph C. Spero |

## I. INTRODUCTION AND STATEMENT OF FACTS

Plaintiff Omar Sharrieff Gay respectfully submits this Trial Brief concerning his sole remaining claim: Defendants Amy Parsons and Gregory Goldstein (collectively, "Defendants"), acting under color of state law as psychologists for the Board of Parole Hearings ("BPH") in their individual capacities, violated his right to equal protection under the Fourteenth Amendment.

On September 3, 2015, Defendants conducted a Comprehensive Risk Assessment ("CRA") interview of Plaintiff. During that evaluation, they made a series of racially and religiously discriminatory remarks. Based in part on that interview, the CRA branded Plaintiff as "high" risk

for future violence. The discriminatory evaluation and resulting CRA caused Plaintiff severe emotional distress.

The evidence at trial will establish that Defendants discriminated against Plaintiff based on his race and religion and that discrimination tainted the CRA they produced, entitling Plaintiff to compensatory, nominal, and punitive damages.

But this case presents far more than a dispute between one prisoner and two psychologists. It tests whether state actors can inject racial and religious bias into the parole process—one of the most consequential decisions the government makes about a person's liberty—and escape accountability. The answer must be no.

The parole system touches thousands of lives each year. In California alone, the Board of Parole Hearings conducts thousands of suitability hearings annually, each one determining whether a human being will remain incarcerated or rejoin society. The integrity of that process depends on fair, unbiased risk assessments. When psychologists tasked with conducting those assessments allow racial stereotypes and religious prejudice to infect their evaluations, they undermine the legitimacy of the entire system. If such conduct goes unremedied, it signals to other state actors that constitutional violations carry no consequences—an invitation to further abuse.

## II. STATEMENT OF FACTS

Plaintiff Omar Sharrieff Gay is an African-American man and a practicing Muslim. At all relevant times, Gay was a life-term inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), housed at Correctional Training Facility ("CTF") in Soledad, California. Defendant Gregory S. Goldstein was a Forensic Psychologist employed by the BPH Forensic Assessment Division. Defendant Amy Parsons was a Senior Psychologist and Supervisor in the same division. Both acted under color of state law.

On September 3, 2015, Defendants Goldstein and Parsons conducted a psychological diagnostic evaluation of Gay in preparation for his upcoming parole suitability hearing. Frankel Decl. Ex. A at 1.[1] During the evaluation, Defendant Goldstein asked Gay, "why do you hate white

[1] All Exhibits refer to the Exhibits to the Declaration of Kevin B. Frankel in support of this brief.

people and Jews?" Dkt. No. 1 ¶ 9. Defendant Parsons interjected, "from a lot of your paperwork on file, we see that you are Muslim . . . tell us a little about who you are, what your religious beliefs really mean to you, and how you became a Muslim." *Id.* ¶ 11. Defendant Goldstein further referred to the members of Gay's father's Pro-Black economic organization as "gorillas and thugs in suits and bow ties," and called his father's Black-empowerment beliefs "garbage" and "nonsense." *Id.* ¶¶ 27–28, 81, 95. Defendants denied Gay restroom access on at least six occasions during the evaluation and manipulated the room's temperature, converting the evaluation into an interrogation-style confrontation. *Id.* ¶ 8.

On September 23, 2015, Defendant Goldstein authored, and Defendant Parsons approved, a Comprehensive Risk Assessment ("CRA") that assessed Gay as posing a "high" risk for future violence. Ex. A at 16. The CRA cited, among other factors, Gay's "continued oppositional attitude toward authority," his purported lack of self-help programming, and antisocial personality characteristics. *Id.* Critically, it stated that Gay "has not communicated an understanding of his total commitment to a particular belief system such as that of his father, his Islamic faith, or any other system he may adopt in the future," and concluded that this "makes his susceptibility to possible negative influences unpredictable." *Id.* The CRA also falsely stated that Gay reported his father "was involved in organized crime" and "extorted money from businesses." *Id.* at 12. It further indicated that "Mr. Gay does not appear to have insight as to why he wholly embraced his father's value system, Islamic Law, or any other system he chooses to embrace in the future . . . a highly significant factor in Mr. Gay's future risk for violence." *Id.* at 14. In reality, Gay had described his father's lawful Black economic nationalist enterprise—a Pro-Black community organization dedicated to economic self-sufficiency. Dkt. No. 1 ¶ 80.

Gay promptly challenged the evaluation and the CRA through administrative channels: he filed a CDCR 602 appeal of the evaluation on September 9, 2015, and an IPA complaint on January 22, 2016, alleging employee misconduct and racial and religious bigotry by Defendants. Dkt. No. 1 ¶¶ 42, 58; Exs. B, C.

Despite's Gay's request that his Parole Hearing be postponed due to the disputed errors and bias in the CRA, the Board refused. Dkt. No. 1 ¶ 20. Instead, on October 7, 2015, the Board of

Parole Hearings ("BPH") proceeded with a hearing concerning Gay's parole suitability. Faced with the choice of proceeding with the tainted, high-risk CRA—which would likely result in a five-year denial of parole—or stipulating to three years' unsuitability, Gay's counsel stipulated on his behalf to the three-year denial. Ex. D at 4.

As a direct result of Defendants' discriminatory conduct and the resulting high-risk CRA, Gay suffered the following injuries: (1) stipulating to three additional years of parole unsuitability (Gay was eventually paroled in 2022); and (2) suffering severe emotional distress, including anxiety, headaches, stomachaches, skin rashes, difficulty sleeping, and depression, as well as strain on his relationships with family and friends. Ex. E at 134:1–11; 138:23–139:6; 168:19–171:3.

## III. RELEVANT PROCEDURAL BACKGROUND

On October 17, 2016, Plaintiff filed this complaint against Defendants, alleging claims for retaliation and violation of the Equal Protection Clause under 42 U.S.C. § 1983. Dkt. No. 1. On June 28, 2017, the Court found that Plaintiff alleged cognizable causes of action against Defendants for retaliation and denial of equal protection. Dkt. No. 16.

None of Defendants' dispositive motions has succeeded in eliminating the equal protection claim. On May 4, 2018, the Court granted Defendants' September 26, 2017 motion for summary judgment on Plaintiff's retaliation claim but denied the motion as to Plaintiff's equal protection claim, holding that Gay's account of racially and anti-Islamic tinged remarks during the evaluation created a genuine issue of material fact as to discriminatory intent. Dkt. No. 28. The Court also found that Defendants are not "entitled to qualified immunity at this stage in the proceedings." *Id.* The Court denied Defendants' April 25, 2019 motion for judgment on the pleadings, holding that Parsons and Goldstein did not exercise discretion functionally comparable to a judge, Dkt. No. 64, and the Ninth Circuit affirmed. *Gay v. Parsons*, 61 F.4th 1088 (9th Cir. 2023). On February 8, 2021, Defendants filed a second motion for summary judgment—again on quasi-judicial immunity grounds—which the Court again denied and the Ninth Circuit again affirmed. Dkt. No. 94.

On August 22, 2024, Defendants filed a third motion for summary judgment and partial motion to dismiss, arguing judicial estoppel, waiver, qualified immunity, Eleventh Amendment immunity, and mootness. Dkt. No. 124. In their reply brief filed May 2, 2025, Defendants withdrew

their summary judgment and qualified immunity arguments on the equal protection claim and asked the Court to grant judgment only on the claims for injunctive and declaratory relief, confirming: "If granted, the only remaining claim for trial will be an equal protection claim for damages." Dkt. No. 136. Plaintiff conceded dismissal of the claims for injunctive and declaratory relief. Dkt. No. 134.

In 2019, BPH destroyed Defendant Goldstein's contemporaneous interview notes from the September 3, 2015 evaluation—two years after Plaintiff sent a September 2017 litigation hold letter. Dkt. No. 130. On September 17, 2024, the Court granted in part Plaintiff's motion for discovery sanctions based on BPH's spoliation of Defendant Goldstein's contemporaneous interview notes. The Court found BPH grossly negligent in destroying the notes, imputed that negligence to Defendants, and ordered an adverse-inference jury instruction. Dkt. No. 130.

Defendants never answered Plaintiff's Complaint. Accordingly, affirmative defenses have been waived.

The case is set for trial on the sole remaining claim: violation of the Equal Protection Clause against Defendants Parsons and Goldstein in their individual capacities, for compensatory, nominal, and punitive damages.

## IV. <u>ISSUES TO BE RESOLVED</u>

The issues requiring resolution are:

1. As for each Defendant, whether Defendants discriminated against Gay during the interview and whether the CRA's conclusions were tainted by Defendants' alleged racial or religious bias, and as a result, Gay should be awarded compensatory damages.
2. As for each Defendant, whether Defendants discriminated against Gay during the interview and whether the CRA's conclusions were tainted by Defendants' alleged racial or religious bias, and as a result, Gay should be awarded nominal damages of $1.00.
3. For each Defendant, if any, who was found to have violated the Constitution, whether that specific Defendant's conduct was malicious, oppressive, or in reckless disregard of Gay's rights, and if so, the appropriate amount of punitive damages as to each such Defendant.

## V. ARGUMENT

### A. Defendants Violated the Equal Protection Clause When They Discriminated Against Plaintiff on the Basis of Race and Religion

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To establish a violation of the Equal Protection Clause under § 1983, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against the plaintiff based on membership in a protected class, including race or religion. *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003). "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) (emphasis in original). A potentially legitimate, nondiscriminatory reason for a decision does not defeat an equal protection claim when other evidence of discriminatory motive exists. *Serrano*, 345 F.3d at 1082–83 (finding racially tinged remarks sufficient evidence of discriminatory intent even where other permissible factors are cited). Prisoners retain this protection. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (Marshall, J., concurring) (race); *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (adherence to a minority religion).

The evidence in this case will establish discriminatory intent. Defendants made overtly racially and religiously charged remarks during a state-mandated evaluation of Plaintiff, and those remarks permeated the resulting written assessment. Defendant Goldstein's inflammatory question—"why do you hate white people and Jews?"—is a textbook example of racial stereotyping. Dkt. No. 1 ¶ 9. It presupposes, without any factual basis, that an African-American Muslim man hates white people and Jewish people simply because of his racial identity. No legitimate clinical purpose justifies this question. It reflects precisely the type of racially tinged remark that the Ninth Circuit has held creates a triable issue of discriminatory intent. *See Serrano*, 345 F.3d at 1082-83 (hearing officer's racial remarks sufficient for jury despite other cited grounds). Defendant Goldstein further characterized Gay's father's Pro-Black economic organization as consisting of "gorillas and thugs in suits and bow ties" and dismissed Black-empowerment beliefs as "garbage" and "nonsense." Dkt. No. 1 ¶¶ 81, 95. These statements are direct evidence of racial

animus: they reveal a mindset hostile to Black identity and culture.

Defendant Parsons also singled out Gay's Islamic faith. Dkt. No. 1 ¶ 11. She treated Gay's religion as a risk factor warranting special scrutiny—beyond any comparable probing of other aspects of his personal history. The 2015 CRA confirmed Parsons's view by citing Gay's "total commitment to a particular belief system such as that of his father, his Islamic faith" as a basis for the high-risk determination. Ex. A at 16.

The CRA itself encodes religious and racial discrimination in its reasoning. It mischaracterized Gay's description of his father's lawful Pro-Black economic enterprise as "organized crime" and "extortion." *Id.* at 12. This distortion—calling lawful Black economic organizing criminal activity—further evidences racial bias. Defendants also expressly used Gay's religion as a basis for a heightened risk determination. The CRA cites Plaintiff's lack of "insight as to why he wholly embraced his father's value system [or] Islamic Law" as a "highly significant fact in Mr. Gays [*sic*] future risk for violence." *Id.* at 16.

The adverse-inference instruction further supports Plaintiff's case. The Court's spoliation order (Dkt. No. 130) permits the jury to presume that Defendant Goldstein's destroyed contemporaneous interview notes—destroyed after a litigation hold had issued—were not only relevant but also favorable to Plaintiff and unfavorable to Defendants. The destroyed notes are precisely the type of contemporaneous documentation that would have corroborated (or contradicted) Gay's account of what Defendants said during the evaluation.

And none of Defendants' possible defenses has merit. The Ninth Circuit has twice found that Defendants were not entitled to qualified immunity, and Defendants even withdrew their qualified immunity defense on the equal protection claim. *Gay v. Parsons*, 810 F. App'x 552 (9th Cir. 2020); *Gay v. Parsons*, 61 F.4th 1088 (9th Cir. 2023); Dkt. No. 136 at 1.

If Defendants reassert that Gay's 2015 stipulation to parole unsuitability waived his equal protection claim, that argument fails for several independent reasons. *First*, Defendants waived any right to assert these defenses. They never pleaded them in a responsive pleading—Defendants have never filed an Answer—and raised them for the first time in 2024. Dkt. No. 124. Defendants then withdrew the argument on reply. Dkt. No. 136 at 1. Thus, even if the PLRA, 42 U.S.C. § 1997e(g),

permits waiver of reply, these defenses are now waived. *Second*, a party's failure to assert a constitutional right does not constitute waiver absent a knowing and intentional relinquishment of the right. *Ostlund v. Bobb*, 825 F.2d 1371, 1373 (9th Cir. 1987). Plaintiff's coerced stipulation—made under the duress of proceeding with a tainted CRA—was not a knowing and intentional waiver of his constitutional rights. *Third*, judicial estoppel does not apply. *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001). Plaintiff's stipulation before the BPH did not adjudicate the constitutionality of the CRA, nor could it have. The BPH had no power to make any finding or determination regarding Plaintiff's equal protection rights.

Finally, Defendants may argue, through their expert Dr. Lareau, that legitimate clinical factors supported the high-risk determination. But the existence of potentially legitimate factors does not defeat an equal protection claim when there is also evidence of discriminatory motive. *Serrano*, 345 F.3d at 1082–83. The question for the jury is not whether any legitimate basis existed, but whether Defendants acted "at least in part because of" Plaintiff's protected status. *Maynard*, 37 F.3d at 1404. The direct evidence of racially and religiously charged remarks—made during the very evaluation that produced the CRA—is more than sufficient to allow the jury to find mixed-motive discrimination.

**B. Plaintiff Was Harmed When Defendants Discriminated Against Plaintiff on the Basis of Race and Religion**

*First*, a plaintiff who establishes a violation of his constitutional rights under § 1983 is entitled to compensatory damages for injuries actually suffered. *Carey v. Piphus*, 435 U.S. 247, 254–57 (1978). Compensatory damages may include emotional distress, mental anguish, and other intangible injuries. *See id.* at 264. Plaintiff's unrebutted deposition testimony and interrogatory responses establish that he suffered substantial compensatory injuries as a direct result of Defendants' discriminatory conduct.

Gay experienced anxiety, headaches, stomachaches, difficulty sleeping, and depression. Ex. E at 134:1–11; 138:23–139:6; 168:19–171:3. He suffered physical manifestations of his distress, including localized skin rashes. *Id.* at 168:19–25; 169:1–19. These symptoms are directly attributable to the trauma of being subjected to racial and religious bigotry during a state-mandated

evaluation and of being branded a dangerous radical because of his race and faith. *Id.* at 138:23–139:6. The CRA and its consequences strained Plaintiff's relationships with family and friends. *Id.* at 133:1–11; Ex. F at 5–7; 18–20. The stigma of being labeled high-risk based on discriminatory assumptions about his racial and religious identity affected his personal connections during his continued incarceration. *Id.*

*Second*, where a plaintiff establishes a constitutional violation, the plaintiff is entitled to nominal damages as a matter of law, even absent proof of actual injury. *Carey*, 435 U.S. at 266–67. Should the jury find that Defendants violated Plaintiff's equal protection rights, nominal damages are a mandatory recognition of that constitutional injury.

*Third*, punitive damages are available in § 1983 actions against individual defendants in their personal capacities when the defendant's conduct is "motivated by evil motive or intent" or involves "reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 47 (1983). Defendants' conduct satisfies this standard: asking an African-American prisoner "why do you hate white people and Jews?" during a state-mandated evaluation; calling Black individuals "gorillas and thugs"; dismissing Black-empowerment beliefs as "garbage" and "nonsense"; singling out a prisoner's Islamic faith as a basis for risk assessment; and encoding these biases into a formal CRA that branded the prisoner high-risk—all of this reflects, at minimum, reckless or callous indifference to Plaintiff's federally protected rights. Dkt. No. 1 ¶¶ 9, 11, 81, 95. Defendants were trained forensic psychologists who knew, or should have known, that using racial and religious stereotyping in a parole risk assessment violates clearly established constitutional rights. A reasonable jury could find that Defendants' conduct reflects evil motive or intent. Their conduct warrants a punitive damages award.

## VI. <u>CONCLUSION</u>

The Supreme Court has long recognized that racial discrimination "is not simply dollars and cents, hamburgers and movies; it is the humiliation, frustration, and embarrassment that a person must surely feel when he is told that he is unacceptable as a member of the public." *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 292 (1964) (Goldberg, J., concurring). That humiliation is no less real—and no less constitutionally offensive—when it occurs inside a prison interview

room. Prisoners do not shed their constitutional rights at the prison gate. *Wolff*, 418 U.S. at 555–56. To hold otherwise would create a zone of constitutional impunity within the very institutions where state power over individuals is at its zenith.

A verdict for Gay will affirm that the Constitution means what it says: no state actor may treat a person differently because of his race or religion. It will send a clear message to forensic psychologists, parole boards, and correctional officials throughout California—and beyond—that professionalism, not prejudice, must govern decisions about liberty. A verdict for Defendants, by contrast, would signal that trained professionals can deploy racial slurs and religious suspicion in official proceedings and suffer no consequences, so long as they can point to other factors in their ultimate determination. That is not the law. *Serrano*, 345 F.3d at 1082–83. Gay's rights must be vindicated.

Date: July 16, 2026

Respectfully submitted,

By: */s/ Kevin B. Frankel*

KEVIN B. FRANKEL (CA 277840)
Benesch, Friedlander, Coplan & Aronoff LLP
100 Pine Street, Suite 3100
San Francisco, California 94111
Telephone: 628.600.2250
Facsimile: 628.221.5828
Email: kfrankel@beneschlaw.com

*Attorney for Omar Sharrieff Gay*

**CERTIFICATE OF SERVICE**

I, Kevin B. Frankel, certify that on July 16, 2026, the foregoing document entitled **PLAINTIFF OMAR SHARRIEFF GAY'S TRIAL BRIEF** was filed electronically in the Court's ECF, thereby upon completion the ECF system automatically generated a "Notice of Electronic Filing" ("NEF") as service through CM/ECF to registered e-mail addresses of parties of record in the case.

*/s/ Kevin B. Frankel*
Kevin B. Frankel