United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OMAR SHARRIEFF GAY,
Plaintiff,
v.
AMY PARSONS, et al.,
Defendants.

Case No. 16-cv-05998-JCS

**ORDER RE MOTIONS IN LIMINE**

Re: Dkt. Nos. 208 - 218

## I. INTRODUCTION

On August 12, 2026, the Court held a pretrial conference in this action and took argument on the parties' motions in limine. At the pretrial conference, the Court addressed the theories of the parties' claims and defenses and the parties entered into various stipulations. The parties' stipulations and the Court's rulings on the motions in limine and set forth below.[1]

## II. DEFENDANTS' MOTIONS IN LIMINE

### A. Defendants' Motion in Limine No. 1 (dkt. no. 208): Evidence of Compensatory Damages

#### 1. Background

In Motion in Limine ("MIL") No. 1, Defendants assert four main arguments. First, they argue that under *Heck v. Humphrey*, 512 U.S. 477 (1994), Plaintiff is barred from pursuing an equal protection claim that would "necessarily imply the invalidity of his conviction or sentence" or necessarily implicate the validity of a "denial of parole or finding of unsuitability for parole" without first establishing that the conviction or denial of parole has been invalidated. MIL No. 1

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

at 2 (citing *Butterfield v. Bail*, 120 F.3d 1023, 1024 (9th Cir. 1997); *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1098 (9th Cir. 2004)). According to Defendants, even if the denial of parole is the result of a constitutional violation, the *Heck* bar applies. *Id.* at 3 (citing *Bess v. Peffley*, No. 3:22-cv-00341-JSC, 2025 WL 3171904, at *4 (N.D. Cal., 2025)).

Second, Defendants argue that even if the *Heck* bar did not apply to Plaintiff's claim that Defendants' conduct caused him to be denied parole in 2015, his claim is too speculative with respect to causation to support compensatory damages. *Id.* at 4-6. In particular, Defendants point to the fact that Plaintiff stipulated in 2015 to unsuitability for parole instead of going ahead with his parole hearing, thus breaking the chain of causation. *Id.* at 5. Defendants also assert that a subsequent denial of parole in 2018 shows that Plaintiff would not have been granted parole in 2015 regardless of Defendants' conduct. *Id.* at 6.

Third, Defendants contend Plaintiff can only prove that he suffered "manifested physical injury" in the form of "localized skin rashes, headaches, stomachaches, and difficulty sleeping" through expert testimony and point out that Plaintiff has no expert to offer such testimony. *Id.* at 6 (citing *Lassalle v. McNeilus Truck & Mfg., Inc.*, No. 16-CV-00766-WHO, 2017 WL 3115141, at *6 (N.D. Cal. July 21, 2017); *Campbell v. McMillin*, 83 F. Supp. 2d 761, 766 (S.D. Miss. 2000)). Therefore, Defendants assert, "[e]vidence of alleged physical injuries should be excluded." *Id.*

Fourth, with respect to Plaintiff's allegation that he suffered "mental distress, anxiety, irritability, and depression," Defendants argue that Plaintiff cannot establish that he is entitled to damages on this basis because: 1) he has not offered any expert testimony by a psychological expert to show that these symptoms were caused by Defendants' conduct; and 2) the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1997e(e), bars recovery of monetary damages for constitutional violations that manifest as mental or emotional harm without a physical injury. *Id.* at 7 (citing *Thompson v. Carter*, 284 F.3d 411, 417 (2d Cir. 2002)).

At the pretrial conference, Plaintiff stipulated that he would drop his claims for compensatory damages and would seek to recover only nominal and punitive damages. Plaintiff reserved on the question of whether he intends to introduce evidence reflecting the emotional distress he contends he experienced as a result of Defendants' alleged discrimination following the

2015 psychological interview. Plaintiff was ordered to inform the Court by **August 19, 2026** whether he seeks to introduce such evidence at trial.

**2. Discussion**

Because Plaintiff has stipulated that he will not seek compensatory damages, much of the evidence that Defendants seek to preclude under *Heck*, or on the basis of lack of causation, is no longer relevant. Therefore, MIL No. 1 is GRANTED as to any evidence related to whether Plaintiff would have been granted parole in 2015 but for Defendants' conduct. To the extent that evidence of "physical manifestations" of emotional distress is only relevant to whether compensatory damages are available for emotional distress under the PLRA, Defendants' request to exclude that evidence is also GRANTED.

Defendants also asked the Court to exclude Plaintiff's testimony relating to his mental distress on the basis that he has not retained a psychological expert. Plaintiff has not yet decided whether he will introduce evidence of the emotional distress he contends he experienced as a result of Defendants' alleged conduct. To the extent he chooses to do so, the Court rejects Defendants' assertion that Plaintiff can only offer evidence of his emotional distress through a psychological expert. While Plaintiff may not self-diagnose, he may offer testimony that he felt depressed, anxious, or sleep deprived or experienced headaches or stomachaches as these are "commonplace emotional descriptors 'rationally based on' Plaintiff's perceptions and could help the jury better understand his alleged emotional injuries." *Sanchez v. Master Prot., LP*, No. CV208472PSGRAOX, 2022 WL 2092995, (C.D. Cal. May 4, 2022) (citing Fed. R. Evid. 701). Furthermore, while Plaintiff may not offer direct testimony about causation, he may offer testimony of surrounding facts to his emotional distress from which the jury could draw a reasonable inference of causation. *See Brackens v. City & Cnty. of San Francisco*, No. 19-CV-02724-SK, 2023 WL 12035597, at *5 (N.D. Cal. July 6, 2023); *Boren v. Harrah's Entm't Inc.,* 2010 WL 4340641, at *2 (D. Nev. Oct. 26, 2010). Therefore, MIL No. 1 is DENIED to the extent Defendants seek exclusion of evidence relating to Plaintiff's emotional distress due to lack of a psychological expert. MIL No. 1 is GRANTED as to testimony by Plaintiff that directly addresses causation or purports to offer a diagnosis.

### A. Defendants' Motion in Limine No. 2 (dkt. no. 209): Limiting Plaintiff to His Discovery Disclosures

#### 1. Background

Defendants ask the Court to limit Plaintiff's testimony about the 2015 CRA to fourteen specific sections of the report that he identified in his interrogatory responses, asserting that they would be prejudiced if Plaintiff were permitted to broaden his attack to encompass other material in the report. According to Defendants, because Plaintiff did not supplement his interrogatory responses, allowing him to rely on other portions of the 2015 CRA would violate Rule 37(c)(1) of the Federal Rules of Civil Procedure.

#### 2. Discussion

Rule 26(e)(1)(A) governs the duty to supplement and provides, in relevant part:

> (1) A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]

Fed. R. Civ. P. 26(e)(1)(a). Rule 37(c)(1) governs the sanctions that may be imposed for failure to supplement discovery responses, providing, in relevant part, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Plaintiff's interrogatory response starts out by saying: "Plaintiff responds that the entirety of the 2015 Comprehensive Risk Assessment reflects bias towards Defendant based on his race and religion because it consistently mischaracterizes and unfairly construes the Plaintiff's personal history, mental health, and prison record." Therefore, Defendants' argument that Plaintiff had a duty to supplement if he wanted to use any particular section that was not included in the examples offered in his response is weak. In any event, the Court finds that Plaintiff's failure to supplement his response was harmless.

"Among the factors that may properly guide a district court in determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010). All of these factors point to the conclusion that any failure to supplement Plaintiff's interrogatory response was harmless as Defendants have had access to the report for many years and it has been apparent from the outset of this case that the 2015 CRA is at the heart of this case. The report also is not long and there is nothing to suggest any bad faith on Plaintiff's part (especially as Plaintiff clearly stated in the interrogatory response that he believed the entire report showed bias). Accordingly, Defendants' Motion in Limine No. 2 is DENIED.

### B. Defendants' Motion in Limine No. 3 (dkt. no. 210): Bifurcation

#### 1. Background

Defendants ask for bifurcation of liability and punitive damages pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, which permits bifurcation "[f]or convenience, to avoid prejudice, or to expedite and economize." They contend that "[t]o argue in mitigation of punitive damages, there must be some evidence in the record regarding a defendant's financial worth." Motion in Limine ("MIL") No. 3 at 2 (citing *Tri-Tron Int'l v. Velto*, 525 F.2d 432, 435 (9th Cir. 1975)). They further contend that "under state law, an award of punitive damages 'cannot be properly reviewed unless the record contains evidence of a defendant's financial worth.' " *Id*. (quoting *Morgan v. Woessner*, 997 F.2d 1244, 1259 (9th Cir. 1993)). Here, Defendants contend, "divulge[ing personal assets to a formerly incarcerated person . . . and the jury before establishing any entitlement to punitive damages would prejudice defendants." *Id*. (citing Cal. Code Regs. tit. 15, § 3400 (prohibiting "undue familiarity," and employee discussions of "personal affairs" with prisoners)).

#### 2. Discussion

Rule 42(b) provides, in relevant part: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims,

crossclaims, counterclaims, or third-party claims." The Court finds that Defendants' reliance on Section 3400 to justify bifurcation is misplaced as that section applies only to individuals who are "prisoners" and Defendants have cited no authority for the proposition that it applies to former prisoners or has any implications for how a former prisoner's request for punitive damages against prison officials should be handled at trial. Nonetheless, the Court finds that it is in the interest of efficiency to conduct the trial in stages, as follows: In the first stage of the trial, the parties will present their cases as to liability and whether Plaintiff is entitled to nominal or punitive damages. If the jury finds in favor of Plaintiff on liability and further finds that he is entitled to punitive damages, a second stage of the trial will be conducted in which evidence of net worth will be offered and the jury will be asked to decide the *amount* of punitive damages to be awarded.

Accordingly, MIL No. 3 is GRANTED in part and DENIED in part.

### C. Defendants' Motion in Limine No. 4 (dkt. no. 211): Testimony about Governing Authorities

#### 1. Background

Defendants ask the Court to preclude Plaintiff from testifying "about any state or federal governing authorities (e.g., constitutional provisions, state and federal statutes, state regulations, prison policies, parole policies, or other governing authorities), and . . . whether those authorities were appropriately complied with during his incarceration and parole process." MIL No. 4 at 1. They point to Plaintiff's deposition testimony in which he offered testimony about various aspects of the law, asserting that he is likely to offer similar testimony at trial and that his testimony is likely to invade the province of both the judge (whose duty it is to advise the jury on the law) and the jury (whose duty it is to apply the law to the facts). *Id.* at 3.

#### 2. Discussion

The Court GRANTS this motion in limine to the extent that Plaintiff will not be permitted to testify about what any rule, regulation, law or Constitutional provision requires because he is not a legal expert. However, to the extent that Plaintiff may seek to introduce evidence of his emotional distress based on his own understanding of what these legal authorities required, the Court reserves on whether such testimony will be admissible. Therefore, as to such evidence MIL

No. 4 is GRANTED IN PART AND DENIED IN PART without prejudice to Defendants' objecting to it at trial.

### D. Defendants' Motion in Limine No. 5: Evidence or Argument Characterizing Plaintiff's Subsequent Parole Stipulation as the Product of Undue Influence, Duress, Coercion, or Other Defects

In connection with his stipulation that he would not seek compensatory damages, Plaintiff agreed that he will not introduce at trial evidence that his 2015 Parole Stipulation was the result of duress or undue influence. Therefore, this motion in limine is DENIED as moot.

## III. PLAINTIFF'S MOTIONS IN LIMINE

### A. Plaintiff's MIL No. 1: To Exclude Collateral Evidence from the Comprehensive Risk Assessment

#### 1. Background

Plaintiff asks the Court to exclude all "collateral evidence from the 2015 Comprehensive Risk Assessment, including eighteen Rule Violation Reports, nineteen Counseling and Informational Chronos, all mental health diagnoses—including Progress Notes and Mental Health Treatment Plans—and all Rule Violation Reports and Mental Health Notes from after 2015." MIL No. 1 at 1 (citing Declaration of Kevin B. Frankel in Support of Plaintiff's Motions In Limine ("Frankel Decl."), Ex. A.

At the pretrial conference, Defendants stipulated that in light of Plaintiff's stipulation to drop his request for compensatory damage, they have no objection to the exclusion of records that post-date the 2015 CRA, including the Rule Violation Reports and Mental Health Notes from after 2015.

#### 2. Discussion

Because Defendants have stipulated that they have no objection to the exclusion of Plaintiff's prison records that post-date the 2015 CRA, Plaintiff's MIL No. 1 is GRANTED as to that evidence. As to any records which Defendants considered in preparing the 2015 CRA, the motion is DENIED as such documents are relevant to the question of whether Defendants were motivated by discriminatory animus. However, as the Court stated at the pretrial conference, it is unclear which documents Defendants relied upon in preparing the 2015 CRA. Therefore, the

United States District Court
Northern District of California

Court has ordered the parties to meet and confer and, no later than **August 19, 2025**, submit a list of all exhibits that the parties agree were part of the record considered by Defendants in preparing the 2015 CRA.

**B. Plaintiff's MIL No. 2: To Exclude Evidence of the 2018 CRA and Testimony of Dr. Chan**

Plaintiff asks the Court to exclude the 2018 CRA and the testimony of Dr. Wendy E. Chan, who interviewed Plaintiff and prepared the 2018 CRA. MIL No. 2 at 1. Defendants stipulated at the pretrial conference that they do not object to the exclusion of this evidence in light of Plaintiff's stipulations relating to compensatory damages. Therefore, this motion is GRANTED.

**C. Plaintiff's MIL No. 3: To Exclude Transcripts of Parole Hearings from Evidence**

Plaintiff asks the Court to exclude transcripts of his October 7, 2015 parole hearing and his October 31, 2018 parole hearing. MIL No. 3 at 1. He contends that this evidence is irrelevant to whether Defendants discriminated against him during his psychological assessment and that it is also not relevant to damages because he does not "seek damages based on his continued incarceration." *Id.* at 3. Defendants stipulated at the pretrial conference that they do not object to the exclusion of this evidence in light of Plaintiff's stipulation relating to compensatory damages. Therefore, this motion is GRANTED.

**D. Plaintiff's MIL No. 4: To Exclude the Testimony of Witness Shaffer as Cumulative**

**1. Background**

Plaintiff asks the Court to exclude the testimony of Jennifer Shaffer, former Executive Officer of the California Board of Parole Hearings ("BPH"), regarding the Comprehensive Risk Assessment ("CRA") process under Rule 403 of the Federal Rules of Evidence. MIL No. 4 at 2. He argues that the testimony will be cumulative because the topics Shaffer would address, including the creation of the Forensic Assessment Division, CRA procedures, and the role of CRAs in parole hearings, "fall[ ] squarely within the knowledge of Goldstein, Parsons, and Lareau." *Id.* at 2. In particular, he asserts that "Dr. Goldstein is best positioned to explain CRA methodology. Dr. Parsons can address supervisory review. Dr. Lareau can speak to FAD standards

and the CRA's role in parole hearings." *Id.*

**2. Discussion**

At the hearing, the Court expressed concern about permitting Shaffer to testify as a lay witness about the interview and parole process and cautioned Defendants against offering duplicative testimony. Nonetheless. The Court concludes that it will be in a better position at trial to evaluate the admissibility of any testimony Defendants seek to elicit from Shaffer. Therefore, the Court DENIES MIL No. 4 without prejudice to any objection Plaintiff may wish to assert to testimony offered by Shaffer at trial.

### E. Plaintiff's MIL No. 5: To Exclude Testimony Regarding the Contents of Destroyed Notes

**1. The Spoliation Order**

This MIL relates to Judge Kang's September 17, 2024 order addressing Plaintiff's request for discovery sanctions based on the destruction of Dr. Goldstein's notes from the 2015 psychological interview of Plaintiff. Dkt. no. 130 ("Spoliation Order"). In that order, Judge Kang found that: 1) Dr. Goldstein sent his notes to the Board of Parole Hearings ("BPH"), which employed Dr. Goldstein, after the interview; 2) Defendants sent a litigation hold to BPH in September 2017; and 3) BPH destroyed the notes pursuant to its normal document retention practices around September 2019. Dkt. no. 130 at 2, 5-6. The court found that BPH had acted with gross negligence when it destroyed the notes because it had received a litigation hold about two years before; that BPH's spoliation could be imputed to Defendants because it was their employer and has an interest in the litigation; that Defendants acted with gross negligence by waiting almost a year to send a litigation hold to BPH; and that the notes were relevant to Plaintiff's claim. *Id.* at 5-16. The court therefore concluded that sanctions for spoliation of evidence were warranted. *Id.* at 16.

The Court did not, however, grant Plaintiff's request for "an order precluding Defendants from testifying about the contents of the destroyed notes, and the issuance of an adverse inference jury instruction [that] would inform the jury that they 'must [. . .] accept as true that Mr. Goldstein's notes taken during the psychological interview of Plaintiff contained racially and

United States District Court
Northern District of California

religiously discriminatory comments[,]' " finding that while the destruction of the notes was due to gross negligence, Defendants' and BPH's conduct was not egregious enough to warrant such a "potentially case-dispositive sanction. " *Id.* at 17. The court also noted that "the Ninth Circuit has . . . made it clear that case-dispositive sanctions should be premised only upon 'bad faith' or 'willful' conduct, rather than mere negligent conduct." *Id.* at 16 (citations omitted). Instead of the case-dispositive instruction sought by Plaintiff, the court found that Plaintiff was entitled to an instruction that was less harsh:

> The instruction shall state, in sum, that Defendant Goldstein wrote personal notes about Plaintiff Gay's Comprehensive Risk Assessment contemporaneous with that assessment; that Defendants had a duty to preserve Defendant Goldstein's notes as evidence for this case; that Defendant Goldstein's notes were destroyed; and that the jurors may, but are not required to, conclude and presume that these destroyed notes are relevant and contain information favorable to Plaintiff and thus unfavorable to Defendants.

*Id.* at 18. Although the court's holding did not explicitly address whether Defendants could present evidence at trial as to what was in the notes, it implicitly rejected Plaintiff's request for an order precluding such evidence and adopted Defendants' position on that question. Defendants argued:

> . . .[Plaintiff's requested] sanctions would amount to a case-dispositive order, and instead propose that, if any adverse inference instruction is to be issued, it should "not be harsher than the instruction in [*Pettit v. Smith*, 45 F. Supp. 3d 1099, 1105 (D. Ariz. 2014)].[2] *Id.* at 9. Specifically, ***Defendants request that the Court allow both Plaintiff Gay and Defendants to present evidence regarding Defendant Goldstein's notes***, and that the Court should instruct the jury that they "may, but are not required to, infer that the lost evidence would have been favorable to Plaintiff." *Id.*

---

[2] In *Pettit*, the court found that spoliation sanctions were warranted where the Department of Corrections had deleted a video of the incident that was the basis for the plaintiff's claims against a correctional officer. While the court found the deletion "suspicious," it did not find that the deletion was the result of bad faith. Therefore, it rejected the plaintiff's request for a case-dispositive instruction that would have *required* an inference be drawn in his favor:

> Instead, the Court will allow the parties to present evidence and argument concerning the lost evidence and will instruct the jury that ADC had a duty to preserve evidence, ADC did not preserve the evidence, and the jurors may, but are not required to, infer that the lost evidence would have been favorable to Plaintiff.

45 F. Supp. 3d at. 1114

*Id.* at 17 (emphasis added).

**2. Plaintiff's Contentions**

In Plaintiff's MIL No. 5, Plaintiff moves to preclude Defendants from testifying about the contents of interview notes that were destroyed in 2019. MIL No. 5 at 1. Plaintiff argues that exclusion of such testimony is consistent with the "best evidence" rule and F.R.Evid. 1004(a):

> The best evidence rule, codified in Federal Rules of Evidence 1001–1008, bars a party from proving a writing's contents through anything other than the original. *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1319 (9th Cir. 1986). Rule 1004(a) permits secondary evidence when originals are lost or destroyed—but not when the proponent destroyed them in bad faith. Fed. R. Evid. 1004(a).

*Id.* at 3. He further contends "[a]llowing Defendants to . . . offer speculative testimony about the notes' contents would conflict with the Court's adverse inference instruction and risk misleading the jury." *Id.* (citing *United States v. DeMarco*, 407 F. Supp. 107, 114 (C.D. Cal. 1975)). In addition, he asserts that "[s]uch testimony would also unfairly prejudice Plaintiff" because "[w]ithout the notes, Plaintiff has no way to test the accuracy of Defendants' recollections or effectively cross-examine them on the notes' contents." *Id.*

**3. Discussion**

The Court DENIES Plaintiff's MIL No. 5 for three reasons. First, the parties addressed the question of whether testimony about the content of the notes should be excluded at trial in connection with the spoliation dispute and Judge Kang sided with Defendants in his Spoliation Order. Although he did not expressly state that the spoliation sanctions he awarded did not include an order precluding testimony about interview notes, it is clear that he rejected Plaintiff's request for such an order, instead agreeing with Defendants and ordering an instruction that mirrors the one in *Pettit*. In *Pettit*, the court made clear that testimony about the content of the destroyed evidence would be permitted at trial.

Second, Plaintiff's argument based on the best evidence rule is foreclosed by Judge Kang's failure to find bad faith on the part of Defendants or BPH. Rule 1004(a) provides that "[a]n original is not required and other evidence of the content of a writing, recording, or photograph is admissible if . . . all the originals are lost or destroyed, and not by the proponent acting in bad



United States District Court
Northern District of California

faith[.]" Judge Kang considered the conduct of Defendants and BPH with respect to the destruction of the interview notes and found no bad faith. The Court declines to revisit that question, especially as Judge Kang considered the evidence relating to the destruction of the notes and therefore was in a better position than the undersigned to determine whether Defendants or BPH acted in bad faith.

Finally, the Court finds that Plaintiff will not be substantially prejudiced by allowing testimony about the content of the notes because Plaintiff will be able to cross-examine Defendants about what was in the notes and will have the benefit of the adverse inference instruction to mitigate the prejudice of not having the notes themselves to rebut Dr. Goldstein's testimony.

### F. Plaintiff's MIL No. 6: To Exclude Evidence That a Judgment Against Defendants Would Result in Financial or Career Harm

#### 1. Background

In MIL No. 6, Plaintiff asks the Court to "exclude any evidence offered by Defendants Gregory S. Goldstein and Amy Parsons . . . that a judgment against them would result in financial or career harm." MIL No. 6 at 1. He contends such evidence has no relevance to any issue in the case and would be offered simply to garner sympathy from the jury. Id. at 2-3.

#### 2. Discussion

The Court agrees with Plaintiff that evidence that a judgment against Defendants would result in financial harm has no relevance to any issue in the case and therefore GRANTS MIL No. 6. As the Court explained at the pretrial conference, however, in granting this motion in limine the Court does *not* preclude Defendants from offering testimony about any belief they may have had at the time of the 2015 psychological interview that making discriminatory comments at the time of that interview would result in adverse consequences with respect to their jobs or compensation. (Plaintiff may, of course, object to such testimony at trial.)

## IV. CONCLUSION

As stated at the pretrial conference, the parties shall provide the supplement materials and information discussed above no later than **August 19, 2026**. The Court further order the parties to

United States District Court
Northern District of California

meet and confer and submit revised proposed jury instructions and verdict forms that reflect the Court's rulings no later than **August 26, 2026.**

**IT IS SO ORDERED.**

Dated: August 18, 2026

JOSEPH C. SPERO
United States Magistrate Judge